## SALT LAKE CITY v. J. B. & R. E. WALKER, Inc., et al.

No. 7437. Decided February 4, 1953. (253 P. 2d 365.)

See 67 C. J., Waters, sec. 1112. Locating easement where grant does not describe its location. 17 Am. Jur., Easements, sec. 86; 110 A. L. R. 174.

*Franklin Riter* and *Fred L. Finlinson,* Salt Lake City, for J. B. & R. E. Walker, Inc.

*Frank E. Moss,* County Atty., *Edward M. Morrissey,* Asst. Co. Atty., *A. A. Allen, Jr.,* and *W S. Livingston,* Assts. Co. Atty., Salt Lake City, for Salt Lake County.

*E. R. Christensen,* City Atty., *Homer Holmgren,* Asst. City Atty., and *A. Pratt Kesler,* Asst. City Atty., Salt Lake City, for respondent.

LARSON, District Judge.

The District Court of Salt Lake County, on September 1, 1949, made and entered a judgment and decree enjoining defendant from removing soil, sand, or rocks from certain lands owned or under lawful lease by the defendant, except under conditions fixed by the court in the judgment and decree. A supplemental order and judgment was entered by the court on December 10, 1949. From both the

original judgment and the supplemental one, the defendant appeals.

The action emerges from the following facts: The plaintiff, a municipal corporation of the State of Utah, during the years of 1906 and 1907, as part of the municipal water system, constructed and installed a concrete conduit from the mouth of Big Cottonwood Canyon, located approximately 15 miles southeast of the plaintiff city, to the city, for the purpose of transporting water from Big Cottonwood Canyon Creek to the municipal area, for use by its inhabitants. The conduit is constructed of concrete and has a measurement, at the points involved in the present controversy, of approximately 3½ feet high by 4½ feet wide, outside measurements (R-800). It has a capacity of 70 cubic feet per second of water. The conduit so constructed and installed traverses the SW¼ of the SW¼ of Section 24, and the NW¼ of the NW¼ of Section 25, T. 2S., R. 1 E., S. L. M. Prior to and during the construction of said conduit, the plaintiff acquired certain rights of way over the aforesaid quarter sections.

The right of way over Section 24 covers, by the conveyance, a strip of land 66 feet wide and 1322 feet long, the center longitudinal line of which is described by distances and directions as it winds over the hillsides. Plaintiff's rights in Section 25 are founded on a deed conveying to the City five acres of land particularly described and

"Also a right of way and easement for all reservoirs, dams, ditches, conduits, pole lines, and the appliances and utilities to be connected therewith to be constructed by the City, wherever these may be located now or hereafter within lands owned by"

the grantor within Sections 23, 26 and 25, Township 2 South, Range 1 East, Salt Lake Meridian. The City's conduit was built and put into operation in 1907, and has been in continuous operation and use since.

Defendant corporation, at the commencement of this action and about two years prior thereto, was in lawful

possession of certain parts of the above mentioned quarter sections of land adjacent to the conduit. In 1946 defendant commenced construction of an extensive plant for production of sand and gravel from the lands in its possession, consisting of conveyers and apparatus for crushing raw materials and classifying the same for use as concrete and road base aggregate. This plant commenced operation in the early summer of 1948 and continued during the trial of the action. Defendant's operations consisted, in part, in removing soil, sand, and gravel from the deposits on the hillsides below the conduit, by means of bull-dozers which moved material from its natural deposit down to the "grizzly" or trap from which is moved by belt further down the hillside to the crusher.

In April 1948, plaintiff, hereinafter called the City, commenced this action against defendant, hereinafter called Walker, to restrain its operations. The City contends that Walker's operations constitute a serious menace and threat to the safety of the conduit because the removal of material from the hillside below was also removing support of the conduit to which plaintiff was entitled. It sought an injunction restraining Walker from making any further excavations below the conduit, and a mandatory injunction requiring Walker to restore the natural slope where it had been disturbed by excavations already made. Walker's answer is essentially a general denial, with specific denials, that the City right of way over Section 25 has a width of 66 feet and also that the conduit is in the center of the right of way. A county highway, known as Wasatch Boulevard, crosses the lands involved in Walker's operations. Part of Walker's plant is above the boulevard and part below. The county, contemplating a widening of the boulevard, intervened, asking the court to determine what, if any, artificial support the County would be required to provide if it made excavations and removal of materials in widening the roadway. After a somewhat extended trial, the court held that over the lands involved in this action (Sections 24 and

25) the City's right of way was 66 feet wide—33 feet on each side of the center line of the conduit, measured horizontally at right angles to the center of the conduit; that the safety of the City's right of way required that the slope of the surface of the hillside below or on the downhill side from the conduit be not steeper than two to one, that is two feet horizontal to one foot vertical, beginning at the outer edge of the right of way and extending down to the Wasatch Boulevard, when or where the slope is denuded of its natural mantle of shrubs, vegetation, and rocks; that a slope of two feet horizontal to one foot vertical beginning at a point two feet vertically above the outer edge of the conduit extending at a uniform slope down to the Wasatch Boulevard is essential for the safety of the conduit when or where the slope is denuded of a mantle of shrubs, vegetation and rocks; that where the surface of the slope is uniform, properly dressed and planted with suitable shrubs and vegetation, a slope of 1½ feet horizontal to one foot vertical, measured from a point two feet vertically above the outer edge of the conduit, is a slope of safety for the conduit, provided that such slope does not extend downward beyond a point where it would be intersected by a one to one slope from the outer edge of the City's right of way, such one to one slope to be dressed evenly in a workmanlike manner, and planted to sumac, oak, or other native shrubs and rounded at the top.

The court enjoined the removal of any material that would leave slopes steeper than those permitted above; and issued its mandate requiring Walker to restore the surface of the hillsides within the lands and territory involved in the action to conform to the slopes and conditions indicated above wherever Walker's operations had disturbed the surface to increase the pitch of the slope to a steeper uniform slope than two to one measured from the outer edge of the City's right of way, which outer edge of said right of way, on the ground is a point vertically below a point 33 feet

on a horizontal plane out from and at right angles to the center line of the conduit.

The Judgment contains some minor limited allowable departures not pertinent to our decision except as may be noted hereinafter. The supplemental order and judgment, entered December 10, 1949 adjudged that the City needed and therefore had over Section 25, a right of way for its conduit, 66 feet wide, 33 feet on each side of the center line of the conduit. The grant of right of way over Section 25 did not define the width of the right of way, nor the center line thereof.

Walker's appeal presents the following questions:

1. Did the court err in adjudging that the City owns and holds a right of way over Section 25, of a minimum width of 33 feet on each side of the center line of the conduit as constructed across Section 25, T. 2 So., R. 1 E., S. L. B. & M.?

2. Does the evidence support Finding of Fact No. 2 that the conduit is constructed and operated along the center of a right of way 66 feet?

3. Was the court in error in adjudging the City entitled to have the hillside maintained, at a slope, not only safe for the conduit, but also safe for the maintenance of the right of way?

4. Are the provisions of paragraphs 1 and 2 of the judgment dated September 1, 1949 erroneous in prohibiting Walker from removing sand, gravel, rocks, etc. from the City's right of way, and requiring Walker to restore the places on the right of way from which soil, gravel, etc. have been removed by Walker?

5. Should the City be required to mark and stake upon the ground the west boundary line of its right of way; and to make and file cross-section surveys of Walker's land

below the conduit, for guidance of Walker as to how far he can go in excavating and removing soil, etc?

We note them seriatim:

1. This question does not involve the lands or right of way in Section 24. Admittedly the right of way over the lands in Section 24 is 66 feet wide, and the center line thereof is fixed by a starting point, directions and distances in the deed creating the easement. The deed creating the easement over Section 25, however, does not specifically fix the location nor width of the easement. The grant is of:

> "a *right of way* and easement *for all* reservoirs, dams, ditches, *conduits*, pole lines and appliances and utilities connected therewith *to be constructed by the City wherever these may be located now or hereafter* within lands owned by" the grantor in Section 25, T. 2 S., R. 1 E., S. L. M. (Italics ours)

Such grant constitutes a "floating" or "roving" easement, the location of which may be fixed by agreement of the parties, by the use of a particular way by the grantee with the acquiescence of the grantor for a considerable period of time, or by one party in whom the grant vests the right of selection or the right to fix the grant, or where the rule of necessity determines the location because any other place would annul, ruin, or militate against the grant. (a) In the instant case, the location or site of the right of way is settled, by selection of locations by the City as provided in the deed, and also by the long lapse (since 1906) since construction of the conduit without objections.

The extent or width of the easement, being unfixed by the grant, must be determined by the purposes of the grant and the requirements for a safe, proper, reasonable and convenient enjoyment thereof. (b) It must be a suitable and convenient way, and afford necessary ingress and egress, and such uses as are reasonably sufficient for accomplishment of the objects of the grant. (c) Such secondary easements include the right to main-

tain and repair the conduit, and the right to go upon the lands reasonably necessary to enable the City to construct, repair, maintain and assure the City the efficient use of the conduit in conducting its water without unnecessary loss thereof by seepage, evaporation or otherwise. (d) The easement includes not only the right to construct and maintain the conduit, but also the banks at the sides to prevent uncovering of the conduit, pipe, cracking thereof, and erosion of soil that might endanger or put added strains upon the conduit, and to restore any soil beside, along, or upon the conduit, that may have been carried away by storm, wind, snow, slides, etc. This includes the right to go upon the lands with animals, vehicles and machinery that may be reasonably necessary for such purpose, and to use the adjacent soil for this purpose if the repairs cannot be made in any other way. (e) The easement carries with it so much of grantor's land on each side of the conduit as may be reasonably necessary for the purposes of maintenance, repair, and enjoyment, doing no more injury than is necessary to insure enjoyment of the easement. By the same token, it must follow that the servient tenement cannot so exercise or use its rights in the land as to destroy, hamper, interefere with, lessen, burden or endanger the dominant tenement or right or privileges incident thereto or necessary to the full enjoyment thereof. *Big Cottonwood Tanner Ditch Co.* v. *Moyle,* 109 Utah 213, 174 P. 2d 148, 172 A. L. R. 175.

It is argued that the trial court should have, and did not, determine the exact width of the right of way over the lands in Section 25; that instead the court just found

"that the plaintiff [City] requires a minimum right of way and easement of 33 feet on each side of the center line of said conduit as constructed for the proper maintenance, repair and replacement of said conduit."

This right of way, a "roving easement," by the nature of the grant creating it had such width as was reasonably nec-

essary for the construction, use, repair, maintenance, replacement and reasonable enjoyment of the conduit. Since the width was not specified in the deed, the court was under the necessity of determining what width was reasonably necessary for those purposes. The court determined that 33 feet on each side of the center line of the conduit was reasonably necessary. This is in effect a finding that the right of way the City acquired by the deed was 66 feet wide, 33 feet on each side of the center line of the conduit as now constructed. Having so determined it follows as of course that the City owns and holds such an easement. Dealing here with "floating easements," which are fixed and determined by the extents and limitations required for the proper use and enjoyment of the easement, any argument as to the meaning of the words—*requires* and *ownership*—is specious. The finding that the City is the owner and holder of a right of way, is the equivalent of a finding that the City has a right of way.

2. The next question is: Does the evidence support or sustain the court's finding that the exercise of the right of way granted requires an easement of 33 feet over the lands bordering the lower side of the conduit, and measured from the center line thereof? As pointed ■ out supra, the grant of a right of way where no width is fixed in the deed, as a matter of law creates an easement of such width as is reasonably necessary for full enjoyment of the easement granted. Without detailing the evidence, the City Engineer, the assistant City Engineer, both of whom had been familiar with the area for many years, and Dr. Marsell, a professor of geology at the University of Utah and a licensed engineer who had studied the district for 14 years and for three years had been conducting a detailed survey of the area, including the materials forming the area, and the force and rate of erosive forces for the U. S. Geological Survey, all testified, with reference to numerous diagrams, graphs and pictures, that a strip of land, or berm, at least 33 feet wide on each side

of the center line of the conduit, was necessary and essential to protect the conduit and enable the City to repair, maintain, preserve, and when necessary reconstruct the conduit; and that any narrow area, would in their opinion not afford sufficient support and protection for the conduit. The assistant County Engineer, a witness for Walker and the County as intervenor, while favoring a 1½ to 1, instead of a 2 to 1 slope, testified that the City should have a berm 33 feet wide at the conduit, which should consist of the natural ground in its natural condition. Dr. Hintze, a former professor of geology at the University, in testifying to slopes of safety, stated that he assumed the City had a right of way, so it could build a road, and could bring in materials for maintenance and repair work which would be necessary. There is definite evidence from which the court could conclude that an easement 33 feet wide on each side of the conduit was reasonably necessary for the proper maintenance, repair, replacement and enjoyment of the right of way.

3. The court found and determined that to assure the safety of the conduit it was necessary to maintain from and below the conduit a uniform slope of the hillside, not steeper than 2 foot horizontal to 1 foot vertical, measured from a point 2 feet vertically above the top of the conduit on its lower or west side down to the Wasatch Boulevard; and that to maintain that part of the right of way on the lower or west side of conduit in a condition where it could be used by the City in maintaining and repairing the conduit, it would be necessary to maintain a uniform slope of the hillside down to the Wasatch Boulevard, not steeper than 2 foot horizontal to 1 foot vertical measured from the edge of the right of way, which is found to be that line on the surface of the ground 33 feet out horizontally and at a right angle from the center of the conduit; if said slopes are denuded of their natural mantle of shrubs, vegetation and rocks. If the slope of safety of the right of way is dressed evenly and planted to shrubs

and vegetation native to the hillside area, such slope of safety may be steepened to a ratio of 1 to 1, from the lower side of the right of way down to the Wasatch Boulevard and enjoined Walker from removing materials which would steepen either of those slopes.

Walker contends that the court could determine and fix only the slope of safety for the conduit so as to limit Walker's excavations. The point urged is that the right of way was only for a water conduit and limited to the uses and extent thereof, and so the City is entitled to support for the conduit only.

We have already held that the easement included a strip of land of sufficiently wide area to enable the City to maintain, repair, reconstruct the conduit, and to go upon the ground as a roadway with vehicles, machinery and materials necessary for such purposes, to make and keep the right of way and the conduit effective and of value. We have upheld the court's determination of the width thereof. To hold that Walker could remove all the soil and material of the 33 feet of the right of way lying to the west of the conduit, and over or above the slope of safety of the conduit, would be to eliminate and destroy completely the right or ability of the City to come up or over any lands on the west or lower side of the conduit. To deny the right of lateral support for a right of way, and especially on a hillside, is to seriously hamper and endanger, if not to competely destroy the easement. A right of way over land which may be completely destroyed by the servient tenement, would be little more than a license at will. The right of lateral support exists for an easement as well as for ownership or for any other interests or uses. *Village of Haverstraw* v. *Eckerson*, Sup., 118 N. Y. S. 337, affirmed on appeal, 192 N. Y. 54, 84 N E. 578, 20 L. R. A., N. S., 287; *City of Troy* v. *Murray*, 128 Misc. 419, 219 N. Y. S. 681.

4. Since the slope of safety of the right of way has been determined and defined, any removal of material which goes through or under that slope of safety presumptively endangers the City's easement and impairs its usefulness and existence. Since such acts lessen or perhaps destroy the easement, the same should be enjoined. Since the removal of material which has occurred within the prohibited area constitutes a danger or risk to the safety, use or existence and enjoyment of the right of way, the risk should be eliminated by repair of the damage done. As quoted in Walker's brief from *City of Pasadena* v. *California-Michigan Land & Water Co.*, 17 Cal. 2d 576, 110 P. 2d 983, 985, 133 A. L. R., 1186,

"Those interests expressed in the grant *and those necessarily incident thereto* pass from the owner of the fee." (Emphasis supplied.)

Can it be doubted that the land occupied by a conduit laid over a sand gravel hillside carrying the culinary water for a considerable portion of the residents of the City necessarily requires lateral support? Again in the same decision we read,

"Whether a particular use of the land by the servient owner * * * is an unreasonable interference is a question of fact for the jury."

In the instant case, the court sitting as a jury determined the question adverse to Walker. In *Big Cottonwood Tanner Ditch Co.* v. *Moyle*, 109 Utah 213, 174 P. 2d 148, 158, 172 A. L. R. 175, this court said:

"Each owner must exercise his right so as not unreasonably to interfere with the other."

Can it be said that removal of lateral support from the lower side of a water conduit crossing a sand and gravel hillside may not be an unreasonable interference? In *Stevens* v. *Bird-Jex Co.*, 81 Utah 355, 18 P. 2d 292, 294, this court said:

"The court will look to the circumstances attending the transaction, the situation of the parties, the state of the thing granted, and the object to be attained, to ascertain and give effect to the intention of the parties"

and again, the use of the property by the owner of the servient estate

"must not be such as to impair the enjoyment of the easement by the owner of the dominant estate, or subject him to extra expense in keeping it in repair."

Can it be doubted that removal of soil and material from the right of way on the side of the hill below the conduit might endanger the conduit, and increase the expenses of maintenance and repair? A very fine discussion of many principles involved in this case, and expounding the point hereunder before us, is found in *Ladden* v. *Atkeson*, 112 Mont. 302, 116 P. 2d 881. See also 17 Am. Jur., Sec. 108, p. 1004; Jones on Easements, Sec. 814, p. 655, also Sec. 820, p. 659; *Yellowstone Valley Co.* v. *Associated Mortgage Investors*, 88 Mont. 73, 290 P. 255, 70 A. L. R. 1002; 28 C. J. S., Easements, § 91, page 771.

In this connection it is contended that there is no evidence that the removal of soil such as the court prohibited would imperil the conduit. No useful purpose would be subserved by setting all the evidence or even the gist thereof. We shall, however, advert briefly to █ the testimony of Dr. R. E. Marsell, geologist at the University of Utah, who made a detailed study of the area during the winters of 1948 and through 1949. He took colored slides which were exhibited to the court through a projector. The explanation of these sides covers some 25 pages of the record (304,329). The professor showed that the soil removals at points came within about eight feet of the center line conduit; that between the fall of 1948 and April 1949, the rim left by excavations by Walker had receded up the hill 12 feet or one-fifth of the distance to the conduit. He further testified that removal of the pro-

tective mantle of vegetation and a long slow period of lime cementation, perhaps a hundred years or more in creation opened up porous material for accumulation of moisture would tend to cause the banks to slough off and collapse and thus increase faster erosion on the right of way itself. (Record, pp. 317-326.) The conclusions of the trial court on these questions are amply sustained by the evidence.

5. We find no merit in Walker's contention that the court should require the City to make a survey or aid in making a survey of boundary line of the right of way on the side nearest Wasatch Boulevard and marking the same upon the ground, and to make and file cross-section surveys. But we think the court should in its findings or its judgment have determined in directions and distances the location of the center line of the conduit over Section 25 from its beginning to the junction with the line defining the center of the conduit or right of way over Section 24. We understand the court had that information before it (1) in Exhibit J, but nowhere in the findings nor judgment is even Exhibit J referred to or made a part of the findings or decree. The court merely found the City had a right of way 33 feet on each side of the center of the conduit as now constructed. That is about the same as saying the City has an easement where it has an easement. Judgments and decrees affecting real estate as this does, are not temporary or fleeting things. They stand as incidents of the land as long as the land itself shall exist. Even though the conduit should be destroyed, the easement would still exist and be subject to use. Now while the matter was and is before the court, it seems inescapable that the center line of the easement recognized and declared should be defined by the court. The findings should therefore be amended to define the center line of the conduit as it extends over the land in Section 25.

We see no necessity for discussing any other matters argued in the briefs.

The findings should be amended to conform to this opinion.

The case is remanded to the trial court with directions to amend the findings and decree in accordance with the views expressed herein and as so amended the judgment and decree are affirmed. Costs to respondent.

WOLFE, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

HENRIOD, J., having disqualified himself did not participate herein.