2004 UT App 256

Jamie EVANS, Plaintiff and Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF UTAH COUNTY, Defendant and Appellee.

No. 20020689–CA.

Court of Appeals of Utah.

July 29, 2004.

698

Samuel D. McVey, Kirton & McConkie, Salt Lake City, for Appellant.

Craig V. Wentz and Barton H. Kunz II, Christensen & Jensen PC, Salt Lake City, for Appellee.

Before Judges GREENWOOD, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Jamie Evans appeals from the trial court's grant of the Board of County Commissioners' (the Board) motion for summary judgment. We reverse and remand.

## BACKGROUND

¶ 2 In 1926, Knight Investment Company (Knight), with the knowledge and permission of Utah County and Provo City, subdivided land it owned south of Provo. Knight divided the property into several lots and platted a network of roads, including Pine Street, which Knight then dedicated for public use. Knight titled the area the "Ironton Plat." At a later date, the R.L. Bird Company (Bird) purchased several pieces of property in and around the Ironton Plat. The property included: Several platted lots within the Ironton Plat (the Lots), a strip of land abutting the southeast boundary of the Ironton Plat (the Strip)—when used in conjunction we will address the Strip and the Lots as "the Property"—and an expanse of land surrounding the southeast corner of the Ironton Plat and connected to the Strip (the Corner Property). Both the Strip and the Lots abut Pine Street. There is a conflict as to whether the Corner Property abuts Pine street at its terminus.

¶ 3 Barring certain improvements not material to this case, neither Knight, nor its assigns, ever developed the Ironton Plat as intended.

¶ 4 In 1983, Bird quit-claimed its interests in the Lots and the Strip to Utah County (the County), reserving to itself and the Corner Property an easement and right-of-way over the Strip and Pine Street. The reservation allowed Bird to access the State highway from the Corner Property. Specifically, the reservation read:

> Reserving to the grantor the public use and right-of-way over and into Pine Street from the State Highway and a 56' wide right-of-way over and across the last parcel of land [included in the quit claim deed (the Strip)], from Pine Street to connect with grantor's remaining property over which Utah County agrees to build a good gravel road within 90 days of the date of this instrument, to provide access to grantor's remaining land.

¶ 5 The County accepted the deed as written and, subsequently, the County built a Public Works Facility upon some of the land. The facility currently includes a public works building, a service station, and a parking lot. In the course of construction, the County removed a large amount of earth from areas in and around Pine street as platted. In 1995, Bird conveyed its interest in the Corner Property, including its easement and right-of-way, to Jamie and Terry Evans (Evans). The easement language in the corrected deed closely tracked the language from Bird's 1983 quit-claim deed to the County.[1]

¶ 6 In 1996, the County vacated several of the platted and dedicated Ironton Plat streets, but left Pine Street as a dedicated street. Evans subsequently filed suit challenging the vacation order and seeking to enforce his easement.[2] In July 2002, following the cessation of settlement talks, the trial court entertained argument on the County's summary judgment motion. Although the court's order contained several dispositive rulings, Evans challenges only that portion

---

1. Although Bird failed to include easement language in its original deed to Evans, "[a] corrective deed relates back to the time of the original conveyance." *Arnold Indus. v. Love,* 2002 UT 133, ¶ 21, 63 P.3d 721. Consequently, because Bird filed a corrected deed, we read Evans's deed to the Corner Property to include the easement language.

2. Evans's complaint challenged the vacation order, claimed that the County had deprived him of his due process rights, pursuant to 42 U.S.C. § 1983, argued that the County was in breach of contract, and sought a declaratory judgment recognizing his right to enforce the easement.

dealing with his easement right. The court ruled that Evans's easement was invalid because (1) Pine Street had no physical existence or historical use, (2) the easement area, as described, contained no existing fixtures to which an easement could attach, and (3) the easement language was fatally vague. Evans appeals. We reverse and remand.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Evans appeals the trial court's grant of summary judgment. "We affirm summary judgment only when 'there is no genuine issue as to any material fact and ... the moving party is entitled to summary judgment as a matter of law.' " *Arnold Indus. v. Love*, 2002 UT 133, ¶ 11, 63 P.3d 721 (quoting Utah R. Civ. P. 56(c)) (ellipsis in original). "We grant the trial court's legal conclusions no deference, reviewing them for correctness. Furthermore, in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (quotations and citations omitted).

> The ultimate determination of whether an easement exists is a conclusion of law, which we review for correctness. However, the existence of an easement is also a highly fact-dependent question; therefore, we accord the trial judge a measure of discretion when applying the correct legal standard to the facts, and overturn a ruling concerning the existence of an easement only if the judge exceeded the discretion granted.

*Carrier v. Lindquist*, 2001 UT 105, ¶ 11, 37 P.3d 1112 (citation omitted).

## ANALYSIS

### I. Statute of Frauds, Vagueness, and Unfixed Location

¶ 8 The County argues that Bird's reservation violated the statute of frauds, that it was too vague to create a cognizable easement, and that the absence of a fixed location, under these circumstances, renders the reservation invalid. We address each assertion in turn.

### a. Statute of Frauds

¶ 9 Express easements involve real property interests. *See Green v. Stansfield*, 886 P.2d 117, 122 (Utah Ct.App.1994). As such, to survive, an express easement must satisfy the statute of frauds. *See Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 781 (Utah Ct.App.1995). "[T]he preferred way to transfer an interest in land and meet the requirements of the statute of frauds is by deed." *Id.* However, " '[a]ll that is required is that the interest be granted *or declared* by a writing subscribed by the party to be charged.' " *Smith v. Osguthorpe*, 2002 UT App 361, ¶ 24, 58 P.3d 854 (citation omitted). "Words that 'clearly show intention to grant an easement are sufficient, provided the language is certain and definite in its term[s].' " *Warburton*, 899 P.2d at 782 (quoting *Martinez v. Martinez*, 93 N.M. 673, 604 P.2d 366, 368 (1979)). "While conveyances of land must contain a description of the land sufficient to locate it without recourse to oral testimony, easements need only encumber a specific servient estate." *Benis v. Shoreridge Water Coop.*, 1998 WL 466665, *3, 1998 Wash.App. LEXIS 1172, at **8–9 (Wash.Ct.App. Aug. 10, 1998). "Besides describing the area subject to the easement, the conveyance granting or reserving an easement should also refer to its purpose." *Id.* at *3, 1998 Wash.App. LEXIS 1172 at *9. However, "[t]he failure of an easement description to specify details, such as the exact location ... does not render the easement excessively vague or unenforceable." *Egidi v. Libertyville*, 251 Ill.App.3d 224, 190 Ill.Dec. 443, 621 N.E.2d 615, 622 (1993). Finally, when an easement arises through a deed reservation, the absence of the grantee's signature does not, necessarily, violate the statute of frauds. *See Chase v. Nelson*, 507 N.E.2d 640, 644 (Ind.Ct.App. 1987) (stating "the covenant which ran with the land was not invalid for the grantee's omitted signature on the deed"); Jon W. Bruce and James W. Ely, Jr., THE LAW OF EASEMENTS AND LICENSES IN LAND–EASEMENT GRANT OR RESERVATION, § 3.1 (Thompson West 2004) ("However, in the case of the creation of an easement by deed reservation, the grantee's signature is not required.").

¶ 10 In 1983, Bird quit-claimed its interest in the Property to the County. However, in the quit-claim deed Bird included the following language:

> Reserving to the grantor [Bird] the public use and right-of way over and into Pine Street from the State Highway and a 56' wide right-of-way ·over and across the last parcel of land [the Strip], from Pine Street to connect with the grantor's remaining property.

Thus, Bird transferred its interest in the Property, and reserved an easement or an exception through the deed. The deed noted both the dominant and the servient estate, established the purpose of the easement or exception,[3] and clearly indicated Bird's intent to reserve an easement when it conveyed the property. Moreover, the County accepted and recorded Bird's quit-claim deed as written; consequently, the County is "charged with knowledge of its contents," and cannot now claim ignorance or lack of agreement. *Chase,* 507 N.E.2d at 644. Accordingly, Bird's easement, which was transferred to Evans, does not violate the statute of frauds, and to the extent that the trial court concluded that it did, we reverse its conclusion.[4]

**b. Vagueness**

¶ 11 The County, relying on *Potter v. Chadez,* 1999 UT App 95, 977 P.2d 533, argues that the language Bird utilized in its deed to the County is fatal to Evans's present easement claim. We disagree.

¶ 12 The trial . court concluded that the reservation as a whole was void because the reservation language was vague, the easement location was not fixed by the deed, and no fixtures existed from which the court could fix the easement location. "A right of way ·founded on a deed or grant is limited to the uses and extent fixed by the instrument." *Labrum v. Rickenbach,* 711 P.2d 225, 227 (Utah 1985) (footnote omitted). "It is also established in this state that a deed should be construed so as to effectuate the intentions of and desires of the parties, as manifested by the language made use of in the deed." *Wood v. Ashby,* 122 Utah 580, 253 P.2d 351, 353 (1952).[5] "Further, when [a] deed creates an easement the circumstances attending the transaction, the situation of the parties, and the object to be attained are also to be considered." *Id.; see*

---

3. "When an easement has been in existence for many years at the time it is mentioned in the deed, it is an exception, not a reservation." 25 Am.Jur.2d *Easements & Licences* § 19 n. 94 (citing *Barrett v. Kunz,* 158 Vt. 15, 604 A.2d 1278, 1281 (1992)). Bird's interest in Pine Street, if any, arose some years before Bird conveyed its interest to the County. There is no question that Bird did not own Pine Street, it being a street platted for public use. However, because Bird may have acquired its property interest with reference to the plat map, it may have acquired a right-of-way over Pine Street, which it could then reserve. Thus, Bird's interest in Pine Street is properly characterized as an exception, rather than a reservation. *See* 25 Am.Jur.2d *Easements & Licenses* § 19 ("Since an exception in a conveyance operates to exclude from the terms of the granting clause some right or interest which would otherwise pass to the grantee, strictly speaking, an easement cannot be created by exception; nevertheless, an easement may be created by an exception of an existing way ...." (footnotes omitted)); *cf. Barrett,* 604 A.2d at 1281 ("Because the easement had been in existence for many years at the time it was specifically mentioned in the deed ..., it was an 'exception,' rather than a reservation....").

4. Although the trial court mentioned the statute of frauds in its findings and conclusions, it did not expressly find that Bird's reservation violated the statute of frauds. Rather, the court focused its analysis on its determination that the easement was invalid due to vagueness.

5. It is also widely· accepted that " 'an express easement ... requires "mutual assent by the parties manifesting their intention to be bound by its terms." ' " *Potter v. Chadaz,* 1999 UT App 95, ¶ 9, 977 P.2d 533 (alterations in original) (quoting *Green v. Stansfield,* 886 P.2d 117, 122 (Utah Ct.App.1994) (additional citations omitted)). In this case,· the County's decision to accept and record the quit claim deed signaled its intention to be bound by the agreement. *See Chase v. Nelson,* 507 N.E.2d 640, 644 (Ind.Ct. App.1987) (stating "the covenant which ran with the land was not invalid for the grantee's omitted signature on the deed"); John W. Bruce and James W. Ely, Jr., THE LAW OF EASEMENTS AND LICENSES IN LAND–EASEMENT GRANT OR RESERVATION, § 3.1 (Thompson West 2004) ("However, in the case of the creation of an easement by deed reservation, the grantee's signature is not required."); *see also* 25 Am. Jur.2d *Easements and Licenses* § 18 (1996) ("Acceptance by the grantee of a deed conveying an easement in express terms brings the easement into existence without any further act on the part of the grantee showing his acceptance of the easement itself.").

*also Hancock v. Planned Dev. Corp.*, 791 P.2d 183, 185 (Utah 1990) ("The paramount rule of construction of deeds is to give effect to the intent of the parties as expressed in the deed as a whole."). The deed "must contain a description of the land that is to be subjected to the easement with sufficient clarity to locate it with reasonable certainty. However, it is not necessary to designate with definiteness the part of the land to which the right attaches." 25 Am.Jur.2d *Easements and Licenses* § 18 (1996) (footnotes omitted); *see also Hall v. Allen*, 771 S.W.2d 50, 53 (Mo.1989) (en banc) ("An easement may be created even though its precise location is not described in the grant."); *Mitchell v. Chance*, 2004 WL 792067, *4, 2004 Tenn.App. LEXIS 218, at *13 (Tenn.Ct.App. Apr. 12, 2004) ("Even though drafters of express easements should prepare a legal description of both the servient tenement and the precise portion of the servient tenement over which the easement runs, deeds or other instruments failing to indicate an easement's location or dimensions are commonplace. However, these sorts of omissions and oversights are not necessarily fatal to the easement." (citations omitted)). "When a deed creating an easement explicitly refers to an existing road, the courts commonly construe the location and dimensions of the intended easement to conform with the location and dimensions of the road." *Mitchell*, 2004 WL 792067, at *5, 2004 Tenn.App. LEXIS 218, at **15–16.

■ ¶ 13 Here, Bird conveyed the Property to the County, but specifically reserved a fifty-six-foot right-of-way over the Strip, as well as a private easement over Pine Street. The purpose of the easement was clear: Bird intended to preserve its preexisting access between the Corner Property and the state highway. Both the Strip and Pine Street are clearly identified, either in the plat map or within the deed. "By accepting the deed, [the County is] charged with knowledge of its contents. If the easement was unsatisfactory, [the County] was free to refuse the deed." *Chase v. Nelson*, 507 N.E.2d 640, 644 (Ind. Ct.App.1987). Thus, when the County accepted the deed, it accepted the terms and the easement was brought into existence. *Potter* does not alter this outcome.

¶ 14 In *Potter*, after examining language which purported to create an easement for a "stranger to the deed," we concluded that "the language in the deed [was] not sufficiently detailed [because the] vague language [did] not constitute a definite and ascertainable description of the property." *Potter*, 1999 UT App 95 at ¶¶ 11–12, 977 P.2d 533. Admittedly, there are factual similarities between *Potter* and the instant case. However, we conclude that the deed language in this case is sufficiently detailed to create an enforceable easement.

¶ 15 From the language in the deed we are able to discern that the Strip is the servient estate, the Corner Property is the dominant estate, and the purpose of the easement is to allow the holder of the Corner Property to move between the Corner Property and the nearby state highway. To this end, the parties agreed to establish a fifty-six-foot wide roadway over the Strip, which would allow Bird, or its assigns, to cross from the Corner Property and onto Pine Street. Pine Street would then be used as the transport portal to reach the highway. In light of this clear and detailed language, we conclude that the trial court erred in determining that the language in the deed was vague and therefore fatal to Evans's easement.

c. Fixing the Easement's Location

¶ 16 The trial court also found that the easement failed "because there exists no physical improvement, fixture, or use of Pine Street" that could be used to fix the location of the easement. Because the location of Pine Street is platted and the plat contains the metes and bounds defining the area that comprises Pine Street, we presume that the trial court's focus was on the absence of fixtures or improvements that could be used to fix the location of the easement over the Strip.

■ ¶ 17 When a deed containing an easement grant does not fix the location of the easement, the

grant constitutes a "floating" or "roving" easement, the location of which may be fixed by agreement of the parties, by the

[acquiescent] use of a particular way ... for a considerable period of time, or by one party in whom the grant vests the right of selection or the right to fix the grant, or where the rule of necessity determines the location because any other place would annul, ruin or militate against the grant. *Salt Lake City v. J.B. & R.E. Walker*, 123 Utah 1, 253 P.2d 365, 368 (1953).

¶ 18 Relying on *Wood v. Ashby*, 122 Utah 580, 253 P.2d 351 (1952), and *Walker*, the trial court concluded that it could not "reasonably discern a proper place to fix the location of the easement by virtue of existing features." This does not accurately reflect either the requirements of the law or the holdings of *Ashby* or *Walker*. In *Wood*, the court was faced with determining the location and purpose of an easement that had been granted through a deed. *See Wood*, 253 P.2d at 352. The deed, as conveyed, reserved to the "grantors a right of way for road purposes." *Id.* However, as time passed, the grantor's successors in interest asserted a "general and unrestricted right of way" over the property." *Id.* at 353. The court's analysis began by noting that deeds should be construed "so as to effectuate the intentions and desires of the parties." *Id.* at 353. The court further established that, to make this determination properly, trial courts must examine "the circumstances attending the transaction, the situation of the parties, and the object to be attained." *Id.* Then, the court identified what may be best described as a straightforward approach to fixing the location of a "floating easement," stating: "Where the provisions of a deed are doubtful the court may also look to the practical construction placed upon the instrument by the parties." *Id.*

¶ 19 Applying this standard, the *Wood* court examined the facts of the case. *See id.* at 353–54. The court noted that the easement was established "to obtain a way in and out of the ... property." *Id.* The court then determined that the transaction created an easement, and not a fee simple interest, and that under the circumstances a practical construction of the easement terms was the most efficient means to determine the easement's location. *See id.* Consequently, after

describing an existing fence and gate that bounded the servient estate, which had traditionally defined the ingress and egress path used by the holder of the easement, the court concluded that the gate described the location of the right-of-way. *See id.* at 353–54. Thus, the court utilized the parties' historical practical construction of the easement to fix its location; it did not, however, establish a rule requiring reliance on such a construction.

¶ 20 *Wood* does not mandate the invalidation of an otherwise valid "floating" easement in the absence of fixtures, improvements, or historical use. The court's use of the word "may" in its analysis reflects its reliance on "practical construction" and suggests that the trial court is granted discretion to consider such factors, but that considering such factors is certainly not required. *Cf. State v. McIntyre*, 92 Utah 177, 66. P.2d 879, 881 (1937) (concluding that the use of the word "may" "indicates a grant of power and not a limitation"); *Crockett v. Crockett*, 836 P.2d 818, 820 (Utah Ct.App.1992) ("According to its ordinary construction the word "may" means permissive, and it should receive that interpretation....").

¶ 21 Similarly, in *Walker*, the court was asked to determine the extent and location of a deed granted right-of-way, which did "not specifically fix the [easement's] location [ ]or width." *Walker*, 253 P.2d at 368. The court, after noting that such a grant constitutes "a 'floating' or 'roving' easement," concluded that "the location or site of the right of way is settled, by selection of locations by the City as provided in the deed, and also by the long lapse (since 1906) since construction of the conduit without objections." *Id.* Consequently, the location of the easement was not central to the case. However, prior to drawing that conclusion, the court articulated several methods that can be used to fix the location of a "floating" easement, including historical usage and practical construction. *See id.* Moreover, although the *Walker* court relied on a practical construction, nothing in the opinion suggests that any one of the outlined acceptable methods is preferable, and three of the acceptable methods— agreement of the parties, the rule of necessi-

ty, and the right of selection—require no reliance on past use or improvements to fix the easement location.

¶ 22 In the instant case, the deed does not fix the location of the right-of-way over the Strip. The language in the deed, however, does clearly identify the dominant and servient estates, the width of the right-of-way, and its purpose. Consequently, Evans's easement is a valid "floating" or "roving" easement, "the location of which may be fixed" by the trial court utilizing any one of the factors articulated by the *Walker* court. *See id.*

## II. The Propriety of Bird's Reservation and Exception [6]

¶ 23 Evans argues that the trial court erred in concluding that Bird could not reserve a right-of-way over Pine Street when Bird conveyed its interests in the Property to the County. " 'Since it is manifest that a grantee may receive only what a grantor has to give, [Evans's] rights are based upon a construction of the original ... deed.' " *Wykoff v. Barton*, 646 P.2d 756, 758 (Utah 1982) (quoting *Wood v. Ashby*, 122 Utah 580, 253 P.2d 351, 353 (1952)) (ellipsis in original). "Under our law, a landowner whose property abuts a public road possesses, by operation of law, a private easement of access to that property across the public road." *Gillmor v. Wright*, 850 P.2d 431, 437 (Utah 1993) (citations omitted); *see also Tuttle v. Sowadzki*, 41 Utah 501, 126 P. 959, 962 (1912) (stating "the abutting landowner, besides his right as one of the public, may acquire a right to private easements, even if he never owned the fee of the soil in the highway"). Moreover,

> [i]t is manifest to all that, where property is sold by a vendor and purchased by a vendee with reference to a map or plat which shows that such property abuts upon a public highway, such map or plat may amount to and may be considered as an implied covenant by the vendor that the highway is what it purports to be, and that it will not be obstructed or interfered with

by him. A vendee may also assume (and such assumption is supported by law) that the other abutting owners may not obstruct the highway so as to prevent him from passing along any portion of the highway to and from his property which abuts thereon.

*Tuttle*, 126 P. at 963; *see Carrier v. Lindquist*, 2001 UT 105, ¶ 12, 37 P.3d 1112 ("Under Utah law, landowners whose property abuts public streets, alleys, and public ways that appear on a plat map are entitled to a private easement over those public ways."); *see also Filios v. Oak Ridge Forest Corp.*, 1999 WL 1034734, at *2, 1999 Conn.Super. LEXIS 2972, at *4 (Conn.Super.Ct. Oct. 28, 1999) ("It is well settled that when reference to a map is made in the deed which conveys a lot and that map delineates roadways, even though there is no express easement granted, in certain circumstances the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands.... This is so even if at the time of the lot transfer the delineated roadways are not developed." (alterations in original) (quotations and citation omitted)); *Campbell v. Brock*, 224 Ga. 16, 159 S.E.2d 409, 411 (1968) (" 'When ... the owner of a tract or boundary of land divides it into lots, streets, and alleys, causes a map or plat of the same to be made and duly recorded whereby the lots, streets, and alleys are delineated, and sells the lots with reference thereto, the purchasers acquire private property rights to the streets and alleys of the subdivision.' " (alterations in original) (citation omitted)); *Newington Plantation Estates Ass'n v. Newington Plantation Estates*, 318 S.C. 362, 458 S.E.2d 36, 38 (1995) ("Absent evidence of the seller's intent to the contrary, a conveyance of land that references a map depicting streets conveys to the purchaser, as a matter of law, a private easement by implication with respect to those streets, whether or not there is a dedication to public use."). However, if the street, or streets, at issue were legally vacated prior to the property being purchased and

---

**6.** There seems to be no question that Bird possessed the right to attempt to reserve an easement over the Strip when it was conveyed to the

County. Consequently, our analysis is restricted to Bird's attempt to reserve or exclude a right-of-way over Pine Street.

the easement arising, the purchaser will not have a private easement right. *See Carrier*, 2001 UT 105 at ¶ 15, 37 P.3d 1112.

¶ 24 The County argues that *Carrier* also requires that the street exist as an improved feature of the area. We disagree. Although it is true that the alley at issue in *Carrier* had been, to a certain degree, improved, and had been "open for public use for over a hundred years," neither condition was central to the decision. *Id.* Instead, the court focused its analysis on whether the alley at issue had been vacated before the plaintiffs purchased their property. *See id.* ("Because the alley had not been legally vacated at the time of plaintiffs' purchase, the trial court was correct in finding that plaintiffs' reliance on the plat map entitles them to private easements over the alley abutting their properties as depicted on the plat map.").[7] Consequently, instead of adding a threshold element to this analysis, *Carrier* merely reaffirms the longstanding doctrine that a private easement over platted streets arises upon the purchase of property with reference to the plat map, so long as the roads have not been legally vacated prior to the purchase. *Cf. Hall v. North Ogden City*, 109 Utah 304, 166 P.2d 221, 224 (rejecting as unsound "[t]he argument that streets could not properly be located on the plat of a townsite unless the street was already in use"), *judgment set aside on other grounds on rehearing*, 109 Utah 325, 175 P.2d 703 (1946).

¶ 25 In the instant case, Pine Street was platted, dedicated, and recorded, on a plat map in 1926. To date, Pine Street remains a dedicated street. Bird purchased several lots within the plat that abut Pine street. However, from the record before this court,

it is impossible to determine when the purchase was made or if Bird acquired the property with specific reference to the plat map. Thus, we cannot determine whether or not Bird acquired a private easement over Pine Street at the time of the purchase,[8] and are therefore in no position to determine the validity of Evans's claim. Moreover, the trial court occupied an equally unsuitable position in making its determination that Bird had no right to reserve or except an easement over Pine Street when it conveyed the Property to the County. Bird's power to reserve or except the use of Pine Street does not turn simply on the historic use of Pine Street, but instead on certain facts not presently in the record. Thus, we conclude that the trial court erred in granting the County summary judgment on this ground.

## CONCLUSION

¶ 26 We reverse the trial court's determination that Evans's easement is invalid. The language in the deed conveying the Property to the County satisfies the requirements of the statute of frauds, and is sufficiently detailed to survive the County's vagueness challenge. The easement reserved by Bird is a "floating" or "roving" easement, the location of which may be fixed through means outlined in *Salt Lake City v. J.B. & R.E. Walker*, 123 Utah 1, 253 P.2d 365 (1953). Finally, when a purchaser of property acquires its interest with reference to a plat map upon which streets have been platted, the purchaser concomitantly acquires a private easement over the streets that cannot thereafter be unreasonably restricted.

¶ 27 Accordingly, we reverse the trial court's determination that Evans's easement

---

7. The language upon which the County bases its argument is merely the *Carrier* court's attempt to distinguish the *Carrier* facts from those presented in *Tuttle v. Sowadzki*, 41 Utah 501, 126 P. 959, 962 (1912). *See Carrier v. Lindquist*, 2001 UT 105, ¶¶ 14–15, 37 P.3d 1112.

8. Evans does not present a separate argument that Pine Street, following its dedication, became a public highway over which Bird, as an abutting landowner, would have had an ingress and egress easement. *See Gillmor v. Wright*, 850 P.2d 431, 437 (Utah 1993) ("Under our law, a landowner whose property abuts a public road

possesses by operation of law, a private easement of access to that property across the public road."). Thus, we express no opinion on this issue except to note that whether or not Pine Street existed as a public highway depends on the law in existence at the time of its platting. *See Mallory v. Taggart*, 24 Utah 2d 267, 470 P.2d 254, 256 (1970) (stating "[w]hatever may be the law now regarding ownership of dedicated streets, the law in force and effect when the land in the instant matter was subdivided and platted" is controlling).

was invalid as a matter of law, and we remand for further proceedings consistent with this opinion.

¶ 28 I CONCUR: PAMELA T. GREENWOOD, Judge.

¶ 29 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.