TUTTLE et al. v. SOWADZKI et al.

No. 2373.   Decided August 17, 1912.   Rehearing Denied September 22, 1912 (126 Pac. 959).

1. DEDICATION—ABANDONMENT—NONUSER—WHEN ABANDONMENT EFFECTIVE. The dedication of a public highway by the filing of a plat showing such highway takes effect when the plat is filed, or at least on the following day, and under Comp. Laws 1907, section 1116, providing that a road not used or worked for a period of five years ceases to be a highway, a highway so dedicated ceases to be such five years from the filing of the plat, unless it has been used or worked in the meantime, in which case it will not cease to be a highway until five years after such use or work.[1]   (Page 508.)

2. EASEMENTS—CREATION—CONVEYANCE BY REFERENCE TO MAP OR PLAT. Purchasers buying lots with reference to a map or plat authorized by the owner, and showing that such lots abut upon a street or alley, which is also shown on the map or plat to be a street or alley, acquire a private easement therein in addition to the public easement which is appurtenant to their lots, and constitutes a property right which can only be taken from them or obstructed by making proper compensation, and which estops the owner of the ground from vacating or obstructing it.   (Page 508.)

3. HIGHWAYS—RIGHTS OF ABUTTING OWNERS. Abutting owners along a public street are not permitted to interfere with or obstruct it, but must permit all abutting owners and those having business relations with them to pass to and from their lots, and this right survives in favor of such owners and others, although the street is vacated as a public highway, pro-

---

[1] Sowadzki v. Salt Lake County, 36 Utah, 127, 104 Pac. 111.

vided such right is based on something tangible which existed when the owners purchased the property.  (Page 510.)

4. EASEMENTS—WAYS—REFERENCE TO MAPS OR PLATS. Where property is sold with reference to a map or plat showing it to abut on a public highway, the map or plat may be considered as an implied covenant that the highway is what it purports to be, and that it will not be obstructed or interfered with by the grantor.  (Page 511.)

5. HIGHWAYS—TITLE OF ABUTTING OWNERS—REVERSION OR DISCONTINUANCE OF HIGHWAY. The owner of a tract of land outside of a city platted it into lots, with a street running through it, and filed the plat.  The land on both sides of this street at the west end thereof was purchased by defendant, who occupied a house partly within the limits of the street and occupied and improved her lots, including the portion within the limits of the street.  The street was never opened nor worked, nor was it used as such by any one until about fifteen years after defendant purchased, and then only the portion east of her property was so used.  The part of the tract not purchased by defendant was sold at foreclosure sale, and about fifteen years after defendant's purchase, portions thereof were purchased by plaintiffs.  Held, that defendant acquired title to the street subject only to the public easement, and that when this easement ceased under Comp. Laws 1907, section 1116, by the failure to open or work the street within five years, no private easements having been created prior to that time, she took title free from all such incumbrances.[2]  (Page 512.)

6. EASEMENTS—CREATION BY IMPLICATION—WAYS IN GENERAL. There being no highway in existence when plaintiffs purchased, no private easement therein passed to them as appurtenant to the land purchased.  (Page 512.)

7. EASEMENTS—CREATION BY IMPLICATION—WAYS IN GENERAL.  If plaintiffs had any equities as against their grantor entitling them to an easement, they had none as against defendant, since they could have had none until they acquired their interests, at which time the highway had ceased to exist.  (Page 513.)

8. HIGHWAYS—ABANDONMENT—EFFECT ON PRIVATE EASEMENTS—"SURVIVE."  A private easement in a highway will continue to exist after the public easement has become extinct only in favor of those who owned a private easement when the public one was extinguished, since, while a private easement may survive the public easement, it cannot "survive" unless both existed at the same time.  (Page 513.)

[2] Brown v. Railroad, 36 Utah, 257, 102 Pac. 740, 24 L. R. A. (N. S.) 86, 140 Am. St. Rep. 804.

9. Highways—Vacation—Right to Vacate. A public street or highway may be vacated against the wish of the abutting owners if just compensation is made to such owners, and compensation need be made only to those showing a special interest in the highway. (Page 514.)

10. Highways—Rights of Abutting Owners After Abandonment. If under peculiar circumstances rights may arise even after a highway has been vacated which will be protected as between abutting owners, such rights must be based on equities. (Page 514.)

11. Easements—Abandonment or Nonuser. While private easements are not lost by mere nonuser, they may be extinguished by abandonment when the acts of the owner show such purpose, and, when once abandoned, they are extinguished for all time.[3] (Page 515.)

12. Easements—Abandonment or Nonuser. Where an owner of land on both sides of a platted highway which had never been opened, worked, or used excluded the public from the portion of the highway passing through her property, she abandoned her easement in the remaining portion of the highway, and could not afterwards compel others to maintain it as a highway. (Page 515.)

13. Highways—Establishment—Petition or Other Application. Where an owner of land on both sides of a highway acquired title to the highway by failure to use and work it, she could not be compelled thereafter to allow it to be opened as a highway without proper application being made to the county authorities to establish it as a highway, or without compensation being made. (Page 517.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Walter G. Tuttle and others against Helen Sowadzki and another.

From the judgment defendants appeal and plaintiffs cross-appeal in part.

Reversed and remanded with directions.

---

[3] Brown v. Railroad, 36 Utah, 264, 102 Pac. 742, 24 L. R. A. (N. S.) 86, 140 Am. St. Rep. 804.

*M. E. Wilson* and *E. A. Walton* for appellants.

*Stephens, Smith & Porter* and *Jas. H. Wolfe* for respondents.

FRICK, C. J.

The respondents brought this action to enjoin appellants from obstructing and from interfering with the use of an alleged public highway in Salt Lake County. The question whether the alleged highway had been abandoned as a public easement or highway or not, was before this court in another action, namely, *Sowadzki v. Salt Lake County,* 36 Utah, 127, 104 Pac. 111. It was there held that by by virtue of Comp. Laws 1907, sec. 1116, the alleged highway had been abandoned as a public easement or highway, and hence Salt Lake County in that action was enjoined from opening or interfering with the plaintiffs in obstructing the same. The present action is brought by the owners of lots abutting on the alleged highway, who insist that they have an easement in the same which is being interfered with by appellants.

The facts with respect to the platting of the ground in question and the use that was made thereof after the plat was filed and recorded are the same as stated in the former opinion. There are, however, some additional facts in this case not brought out in the former one. On the 1st day of July, 1891, one Fred V. Dankowski was the owner of a parcel of ground outside of the City of Salt Lake, in the body of Salt Lake County, 726 feet in length by 287.1 feet in width. Said Dankowski divided said parcel into lots and blocks with one fifty-foot street running through the center thereof lengthwise, which was called Wabash Avenue. On the date aforesaid said Dankowski duly filed a plat of said ground for record, and the same was recorded as provided by law in the records of Salt Lake County. The ground as platted was called Dankowski's Park, and was platted in the form shown on the following plat, except that

what is marked "Block 1" and "Block 2" thereon was divided into thirty-six lots, eighteen on each side of said Wabash Avenue.

In the case referred to we held that by filing and recording said plat Dankowski dedicated said Wabash Avenue to the public as a public highway, but further held that in view that the evidence was conclusive that Wabash Avenue was outside of any incorporated city or town, and that it had never been used or worked by the public, for that reason, under the provisions of Comp. Laws 1907, sec. 1116, which provides "that a road not used or worked for a period of five years ceases to be a highway," said Wabash Avenue had been abandoned, and long before the former action was commenced it ceased to be a highway. It appears from the court's findings that, before Dankowski platted said parcel of ground, he executed, delivered, and had recorded a mortgage to one L. C. Crossman, whereby he mortgaged said parcel to secure the payment of the sum of $5000. In said mortgage the mortgagee gave express permission to the mortgagor to plat the land mortgaged into lots and to sell the same applying the proceeds of the sales, if any, in payment of said mortgage. Said mortgage was duly assigned to one Potter G. Ross. On September 8, 1892, said Fred V. Dankowski duly conveyed by warranty deed lots marked 24 and 25, and on September 19, 1894, by a like deed, conveyed lots marked 26, 27, and 28, all in that portion of block 1 marked "S," on the foregoing plat to S. Dankowski, and on the 20th day of June, 1904, said S. Dankowski con-

veyed by warranty deed all of the foregoing lots to the appellant Helen Sowadzki. On December 20, 1901, said Fred V. Dankowski, by warranty deed, duly conveyed to said appellant Helen Sowadzki all of lots 24, 25, 26, 27, and 28, in that portion of block 2 marked "S" on the foregoing plat, so that since 1904 said appellant has been the owner of all the lots aforesaid, and which are shown in that portion of block 1 and block 2 marked "S" "S." On the 24th day of August, 1894, all of the lots aforesaid were by the mortgagee duly released from the mortgage aforesaid, and said mortgage ceased to be a lien thereon. Said Fred V. Dankowski failing to pay said mortgage, Potter G. Ross as assignee, on the 26th day of October, 1897, commenced an action to foreclose the same upon all the lots in blocks 1 and 2, except the lots that had been released and conveyed as aforesaid marked "S" "S" on the foregoing plat. Thereafter all of said lots except those that had been released were upon foreclosure sale duly sold, and a sheriff's deed therefor was duly issued and delivered to said Potter G. Ross as the purchaser at said foreclosure sale. Thereafter said Potter G. Ross died, and one Henry Lester Ross succeeded to and became the legal owner of said lots in blocks 1 and 2 aforesaid, all of which he on the 22d day of January, 1906, by proper deed duly conveyed to one Edna Morningstar, who thereafter, on March 6, 1906, and on different dates thereafter, by proper deed conveyed some of the lots abutting on said Wabash Avenue in both blocks, 1 and 2, to the respondents herein, who were the legal owners thereof when they brought this action. It also appears from the findings that at the time of and for a long time prior to the platting of said parcel of ground the same constituted the home of said Fred V. Dankowski and his family who lived in a house erected thereon at the point marked "H" on the foregoing plat; that appellant Helen Sowadzki became an occupant of said house and the lots purchased by her as aforesaid some years before she purchased them, and that said house was by her during her occupancy repaired and improved, and she occupied and used the lots and a portion lying within Wa-

bash Avenue for flower beds, and planted shrubbery thereon; that for more than thirty years last past a fence was erected and maintained along the west line of said property and the east margin of State Street, which sometimes was out of repair; that the whole of blocks 1 and 2, including the portion within said Wabash Avenue, was cultivated as one field, and was at no time from the time said plat was filed for record until 1906 used by the public or by anyone as a street, and there is nothing to show that the same was used for such purpose by anyone except the respondents as purchasers of lots after the year 1907 or 1908, when they used that portion east of appellants' property. Some of them had attempted to use that portion which appellants occupied as aforesaid, but appellants have always maintained said fence across Wabash Avenue on the west of them, and excluded respondents and others from using the same. We remark that we lay no particular stress upon the fact that said parcel of ground and Wabash Avenue were used for a particular purpose; but what we deem important is that said street was never used as such by anyone up to 1907, and that it was continuously barred from use both before and after respondents became the owners of lots abutting thereon. From the plat it also appears that said Wabash Avenue runs between what is known as an extension of State and Second East Streets, both of which at the point in question are outside of the corporate limits of Salt Lake City, and lie within the body of the county.

After a trial the court made findings of fact and conclusions of law in favor of respondents, but refused to grant their prayer to the extent of compelling appellants to open Wabash Avenue for the full width thereof, but required them to open the same only for that portion which is marked "way" on the foregoing plat. Appellants appeal from the whole judgment, while respondents appeal from that portion only which requires appellants to open only the portion of Wabash Avenue as aforesaid.

It is conceded by all parties to this action that Wabash Avenue ceased to be a public street or highway as held in

*Sowadzki v. Salt Lake County, supra.* The point of time when said avenue ceased to be a public highway was when it had not been worked or used for a period of five years from the time it became a public highway by dedication. The dedication took effect at the time said plat was filed, or at least upon the day following, and, if said Wabash Avenue had been used or worked at any time before the expiration of five years from said time, it would have continued to be a public highway for at least five years from and after such use or work. When full five years had expired, however, then, by virtue of our statute to which we have referred, said avenue ceased to be a public street or highway. The first five years, therefore, expired either on the 2d or on the 3d day of July, 1896. After that date Wabash Avenue ceased to be a public highway. It is, however, contended by respondents that in platting the land into blocks and lots which abut upon streets, and in selling such lots with reference to such plat, in addition to a public easement in the street, a private easement therein is also created in favor of and for the use of the abutting lot owners, which is a private right which cannot be affected by public authorities by merely abandoning the public easement.

No doubt the law is to the effect that purchasers buying lots with reference to a map or plat which is authorized by the owner of the ground, and such map or plat shows that such lots abut upon a street or alley which also is shown on such map or plat to be a street or alley, then, and in such event, the purchasers acquire a right to have such street or alley maintained as such, and the owner of the ground is estopped from vacating or from obstructing the same. Under such circumstances, the purchasers, in addition to a public easement, also acquire what is termed a private easement in a street or alley which is appurtenant to their lots and constitutes a property right which can only be taken from them or obstructed by making proper compensation therefor. Many authorities are to this effect, among which we refer to the following: *Carter v. Portland,* 4 Ore. 339; *Meier v. Portland City Ry. Co.,* 16 Ore.

500, 19 Pac. 610, 1 L. R. A. 856; *Holloway v. Southmayd,* 139 N. Y. 390, 34 N. E. 1047, 1052; *Dobson v. Hohenadel,* 148 Pa. 367, 23 Atl. 1128; *White's Bank v. Nichols,* 64 N. Y. 65; *Dill v. Board of Education,* 47 N. J. Eq. 421, 20 Atl. 739, 10 L. R. A. 276; *Van O'Linda v. Lothrop,* 21 Pick. (Mass.) 292, 32 Am. Dec. 261; *Town of Rensselaer v. Leopold,* 106 Ind. 29, 5 N. E. 761; *Bell v. Todd,* 51 Mich. 21, 16 N. W. 304; *Hewes v. Village of Crete,* 175 Ill. 348, 51 N. E. 696. Some courts have held that, where a public highway is abandoned, in such event the private easement therein is also lost. The holding seems to be based upon the theory that a private easement, as the lesser one, is merged into the public or the greater easement. (See *Bailey v. Culver,* 84 Mo. 531, and *Kimball v. Kenosha,* 4 Wis. 321.) In 14 Cyc., p. 1182, the author, after referring to the diversity of opinion upon the subject, concludes his remarks as follows:

"But, according to the better opinion, if the road be a public highway, the easement so granted survives the extinguishment of the public easement by the discontinuance of the highway by act of law; for these private easements are independent of the public easement, and are in their nature as indestructible by acts of the public authorities or of the grantor of the premises, as is the estate itself, which is a subject of the grant. And if a man grant land bounding expressly on the side of the highway, so that the title to the soil under the highway remains in him and the highway is discontinued by competent authority, the grantor cannot so use the soil of the highway as to defeat his grantee's right of way, or render it substantially less beneficial. Whether this should be deemed to operate as an implied grant, warranty, covenant, or an estoppel is immaterial, for the right itself is inferred from that great principle of construction that every grant and covenant shall be so construed as to secure to the grantee the benefits intended to be conferred by the grant and that the grantor shall do nothing to defeat or essentially impair his grant."

In *Holloway v. Southmayd, supra,* it is said:

"The easement which the public acquires in the land, upon the laying out of the highway, is limited to those uses for which highways have ordinarily been understood to be intended; but the abutting landowner, besides his right as one of the public, may acquire a right to private easements, even if he never owned the fee of the soil in the highway."

In New York, as in many states, the private easement is regarded as existing independently of the public easement, and that it survives in favor of the abutting owner, although the public highway is vacated according to law.

In view of the foregoing, it is in effect contended by respondents' counsel that, although Wabash Avenue was abandoned as a public highway as held by this court, yet since respondents have purchased lots abutting on said avenue they, as abutting owners, have acquired private easements therein which the public could not abandon, and which cannot be taken from them without making compensation therefor according to law, or until they either voluntarily dispose of or abandon the same. Counsel for appellants, on the other hand, contend that, although the law be conceded to be as above outlined, yet the respondents have acquired no easements or rights in Wabash Avenue, and could acquire none therein, for the reason that the same ceased to exist as a public highway long before they purchased the lots in question. The real question to be determined therefore is: What, if any, rights have respondents acquired in Wabash Avenue that are enforceable in this action as against appellants?

It may be conceded for the purposes of this opinion that the weight of authority is to the effect that the abutting owners along a public street are not permitted to interfere with or obstruct the same, but must permit all abutting owners and those who may have business relations with them to pass to and from the lots, and that this right survives in favor of such owners and others, although the street is vacated according to law as a public highway. This right, by many authorities, is based upon what are termed to be mutual estoppels arising between vendor and purchaser and between abutting owners. As pointed out, however, in the quotation from Cyc., *supra*, the right exists, and it is not material whether it be based upon one or another reason. However, the right must rest upon some equitable principles, regardless of what name is applied.

It is manifest to all that, where property is sold by a vendor and purchased by a vendee with reference to a map

or plat which shows that such property abuts upon a public highway, such map or plat may amount to and may be considered as an implied covenant by the vendor that the highway is what it purports to be, and that it will not be obstructed or interfered with by him. A vendee may **4** also assume (and such assumption is supported by law) that the other abutting owners may not obstruct the highway so as to prevent him from passing along any portion of the highway to and from his property which abuts thereon. So far, the matter is clear enough that the right of the abutting owner is based upon something that is tangible and which exists at the time he purchased the property. In the case at bar, as we have pointed out, no lots were purchased by the respondents, abutting on Wabash Avenue either by themselves or by their grantors, until long after such avenue had ceased to be a public highway by reason of having been abandoned under our statute. Counsel for respondent concede this, but contend, giving their contention in their own language, that:

"The proposition as applied to this case and as stated in the concrete would read as follows: When F. V. Dankowski, who before September, 1892, was owner of all lots in the tract previously platted by him, sold to S. Dankowski lot 24, block 1, which was sold with reference to a roadway —i. e., Wabash Avenue—he was estopped asserting S. Dankowski had no right over the roadway touching the lots which he retained, and likewise S. Dankowski was estopped from asserting that F. V. Dankowski had no right of way over the roadway touching the lots which the former had just bought. The same condition of estoppel existed between F. V. Dankowski and Helen Sowadzki regarding the roadway touching lot 24, block 2. These rights existed, of course, between the grantees of the said parties; namely, the plaintiffs and the defendants in this action, and the fact that one of the links in the chain of title is an involuntary conveyance makes no difference."

Assuming for the purposes of this decision, that, as between Fred V. Dankowski as grantor and his grantee, an

estoppel arose as and for the reasons suggested by counsel, the question, however, is: How does such an estoppel affect appellants? When Dankowski made the conveyances shown by this record, Wabash Avenue existed as a public highway, and therefore constituted a public easement, upon which, according to the authorities mentioned, a private easement could likewise be imposed. Neither of the respondents, however, purchased from either Fred V. Dankowski or his grantees, but they purchased from one who obtained his title at a judicial sale without any covenants whatever. Moreover, respondents purchased the lots at least ten years (some more than that time) after Wabash Avenue upon which they abut, had ceased to be a public highway, and for more than fifteen years preceding the purchase of said lots appellants had always refused to recognize Wabash Avenue as a public highway, but had always barred and prevented ingress and egress to and from the same from State Street. Again, Helen Sowadzki, by becoming the purchaser of lots 24 and 24 in blocks 1 and 2, as indicated on the plat, obtained the title to the center of Wabash Avenue subject only to the public easement, if one then existed. (Comp. Laws 1907, sec. 1120; *Brown v. Railroad*, 36 Utah, 257, 102 Pac. 740, 24 L. R. A. (N. S.) 86, 140 Am. St. Rep. 804.) The moment the public easement ceased to exist by reason of its abandonment, and in the absence of any existing private easements in Wabash Avenue, Helen Sowadzki took the title free from all such incumbrances.

This must of necessity be so. In the case of *Van O'Linda v. Lothrop, supra,* in referring to whether a private easement may pass to an abutting owner as an appurtenant to a public one, the court, at page 296 of the volume cited, remarks: "Nor did any way pass as appurtenant to the land granted, none being in use or in existence" at the time of the grant. This doctrine has direct application to the case at bar. There being no public highways or easement in existence when respondents obtained their lots, no such easement could pass to them as appurte-

nant to the lots, nor could a private easement be created in a public highway because no such highway was in existence.

Assuming, but not deciding, that if Fred V. Dankowski had deeded the lots to respondents, and they had purchased with reference to his plat from him, then, as against him, they would have some remedy upon the implied covenant that a public highway existed as represented by the plat, although the same had ceased to exist in fact; upon what principle, however, can respondents rest their claim as against appellants? As against them the claim, if it is to be sustained, must rest upon some equities. In *Bell v. Todd, supra,* Mr. Justice Cooley, in referring to a similar claim, at page 28 of the volume referred to says:

"In some other cases it is held that the purchaser of a lot described as bounded on a street or way is entitled to have it kept open for the whole distance shown by the plat or description; but the decision in every case has been based upon substantial equities. It could not have been otherwise; for estoppels rest upon equities and are enforced for their protection."

When did any equities arise in favor of respondents as against appellants? Certainly none could have arisen in respondents' favor until they acquired their interests in the lots abutting on Wabash Avenue and that occurred about ten years after that avenue ceased to be a public highway.

When the authorities speak of the fact that a private easement exists independently of and may survive the public easement in a highway, they mean just what the language implies, namely, that, while the two need not be created at the same time, yet they must exist contemporaneously. If this be not so, it is impossible for a public easement to be lost, and yet the other one survive. One thing survives another only in case where at one time the two coexisted, and, if there is a survivor, it must be because the other has ceased to exist. It is a mistaken theory that a private easement continues to exist in all cases after a public easement has become extinct. This does and can occur only in favor of those who own a private easement when the public one is extinguished.

Nothing is better settled in this country than that a public street or highway may be vacated against the wish of the abutting owners, provided just compensation is made to such owners. When no private rights exist in the highway sought to be vacated, such vacation may be made as a matter of course. (*West Chicago, etc., v. McMullen,* 134 Ill. 178, 25 N. E. 676, 10 L. R. A. 215.) If the owner's property may be taken against his will, so may his easements constituting property rights be destroyed if just compensation be made therefor. In order to be entitled to compensation in case a public highway is vacated, the claimant must show a special interest in the highway.

It may be that rights may arise under peculiar circumstances even after a highway has been vacated which will be protected as between abutting owners, but such rights must be based upon equities. It is elementary, however, that a person cannot object to the vacation of a highway if he has no other interest therein save as one of the public. Suppose that the county commissioners of Salt Lake County, in whom was and is vested the power to establish and vacate highways, at any time before Wabash Avenue had ceased to exist as a highway had undertaken to vacate the same according to law, would anyone of the respondents have been a proper party to such proceeding, and would any one of them have had any standing in court or elsewhere for the purpose of objecting to the vacation of said avenue? Why not? Simply because of their lack of interest. If, therefore, Wabash Avenue could have been vacated without their consent because they had no rights or interests that were or could be affected, could not that avenue, for the same reason, be abandoned as a public highway without their consent or in anyway affecting their rights? If respondents had no rights which could be affected in case of vacation, then how can they claim any rights now merely because said avenue was abandoned as a public highway rather than vacated? Either method had the legal effect to extinguish the public easement as against all who had no special interests therein, and it is not easy to perceive how

anyone (except as against his vendor or under special circumstances as hereinbefore explained) could obtain any rights by estoppel or otherwise in an abandoned or vacated highway after it ceased to exist. If this be not so, then a highway cannot be vacated so as to prevent subsequent purchasers of property abutting on a vacated highway from acquiring rights in a supposed highway precisely the same as though it still existed as such. In the very nature of things this cannot be the law. As Mr. Justice Cooley well says, such rights must be based upon existing equities. Counsel have cited no case, and we have found none, where any court has gone to the extent of holding that a purchaser of abutting property who becomes such after the highway has been vacated or abandoned acquires the right to compel all obstructions to be removed from such highway and that it remain open as such for his benefit.

But, if we should hold that a private easement may be acquired by an abutting purchaser who purchases after the highway has been vacated or abandoned upon the theory advanced by respondents, yet, under the undis- **11, 12** puted facts of the case at bar, respondents must fail. As we have pointed out, respondents base their claim to have Wabash Avenue opened upon the fact that appellants were bound to keep it open for themselves as well as all others, who, like them, were abutting owners. In other words, respondents contend that appellants obtained a private easement in Wabash Avenue, and that all other abutting owners thereon obtained a like easement, and that every owner was compelled to keep the avenue open so that every other owner might perpetually enjoy his easement. The estoppels, it is contended, were mutual. In the case of *Brown v. Railroad,* 36 Utah at page 264, 102 Pac. at page 742 (24 L. R. A. [N. S.] 86, 140 Am. St. Rep. 804), it is, however, pointed out that "an easement may nevertheless be lost or extinguished." That an easement may be abandoned is well settled, and the circumstances under which it may be done are set forth in the case last referred to and the authorities are there cited. In the case at bar, after Wabash Avenue had

been abandoned as a public highway, the only easement that remained, according to respondents' own theory, was the private easement of appellants which gave them the right to use the avenue to pass to and from their property abutting thereon. This right was, however, a private right which appellants could abandon without consulting anyone. True, as respondents' counsel contend, an easement obtained by grant is not lost by mere nonuser. It may, however, be abandoned, and thus extinguished, and this may be found to have taken place when the acts of the owner thereof clearly show that such was his purpose. When an easement is once abandoned, it is extinguished for all time. (*Brown v. Railroad, supra.*) In the case at bar every act of appellants from and after they took possession of the property in question indicated that they did not intend to keep Wabash Avenue open as a street or highway for passage. Suppose that after all these years appellants had brought an action against respondents to compel them to open and keep open Wabash Avenue upon the theory that respondents insist upon, namely, that each abutting owner was required to maintain the avenue open for passage for all the other abutting owners, could not respondents successfully contend that the doctrine no longer applied because appellants by their own acts and conduct had abandoned their right to the easement in Wabash Avenue, and hence could not compel others to maintain what they by their own acts had lost and extinguished? If appellants, therefore, had lost their rights in Wabash Avenue when this action was commenced by abandonment, then, according to respondents' own theory, there was nothing left upon which they could base their claim to have the same opened. That claim, as we have seen, is based entirely upon the assumption that appellants kept the easement alive for respondents' benefit as well as for their own. If, therefore, the easement falls, then respondents' claims must necessarily fall with it.

We are clearly of the opinion that respondents had no enforceable rights in that portion of Wabash Avenue on which appellants' property abutted, as against them, and

hence the court erred in compelling appellants to open up and to maintain free from obstruction that portion of said avenue which is particularly described in the decree or judgment.

What has already been said also disposes of respondents' appeal as well as the special defenses interposed by appellants. Under our statute, and, under the law as it has been declared by a large number of courts of this country for generatons, the title to that portion of Wabash Avenue adjoining appellants' property discharged of the public easement, vested in the owner thereof immediately upon the abandonment of Wabash Avenue as a public highway. This title, when this action was commenced and for a long time prior thereto, was in appellants. Under the law, they are therefore the owners thereof discharged from either public or private easements or rights. In defending this action, appellants are therefore only asking to have their legal rights protected. This the courts are bound to do. If it be necessary to establish Wabash Avenue as a public highway, the law provides a way by which it may be done without inflicting injury upon anyone. When a proper application is made to the county authorities to establish a highway, they no doubt will act, and appellants can then be compelled to yield their property for public benefit after obtaining compensation therefor as the law provides. Until such is done, they cannot be required to yield any of their rights.

The findings of fact and conclusions of law and judgment are therefore vacated, set aside, and reversed; and the cause is remanded to the district court of Salt Lake County, with directions to enter findings of fact and conclusions of law in favor of appellants, and to enter judgment enjoining respondents and those claiming under them from entering upon or from in anyway interfering with said Wabash Avenue where the same adjoins appellants' property as set forth in the findings of fact, and to dismiss respondents' complaint; appellants to recover costs.

McCARTY and STRAUP, JJ., concur.