2005 UT 74

**Jamie EVANS, Plaintiff and Petitioner,**

v.

**BOARD OF COUNTY COMMISSIONERS, Defendant and Respondent.**

No. 20040739.

Supreme Court of Utah.

Nov. 4, 2005.

Alexander Dushku, Daniel J. McDonald, Jason W. Beutler, Salt Lake City, for plaintiff.

Craig V. Wentz, Barton H. Kunz, Salt Lake City, for defendant.

NEHRING, Justice:

¶ 1 Jamie Evans claims an easement over land owned by the Board of County Commissioners of Utah County. The court of appeals reversed the trial court's summary judgment finding that Mr. Evans's easement was too vague to be enforced. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In 1926, Knight Investment Company recorded the Ironton Plat, a subdivision located in Utah County. The plat is roughly rectangular in shape with its length running north to south. Eight east-to-west streets dedicated to public use divide the plat into seven blocks upon which lots are laid out. Pine Street is the southernmost of these streets. In 1935, the State of Utah realigned Highway 89 to traverse the length of the west side of the plat as part of its route from Provo City to Springville City. Pine Street, which intersects Highway 89, is the only of the Ironton streets to feature prominently in this appeal.

¶ 3 At a later date, R.L. Bird Company acquired land within the Ironton Plat immediately south of Pine Street along with several additional lots located along the plat's eastern boundary. Bird also obtained title to a substantial tract of land surrounding the southeast corner of the plat, which we will call the corner property. The corner property abutted the strip of land Bird owned south of Pine Street and the lots Bird owned on the east boundary of the plat.

¶ 4 In 1983, Bird quit-claimed its interest in its land within the plat, the strip south of Pine Street and the lots, to Utah County. Bird retained ownership of the corner property and, as part of the conveyance to Utah County, reserved an easement and right-of-way over the strip and Pine Street to provide access to the corner property from Highway 89. The reservation read:

> Reserving to the grantor the public use and right-of-way over and into Pine Street from the State Highway and a 56' wide right-of-way over and across the last parcel of land [included in the quit claim deed (the Strip)], from Pine Street to connect with grantor's remaining property over which Utah County agrees to build a good gravel road within 90 days of the date of this instrument to provide access to grantor's remaining land.

¶ 5 As of the date Utah County acquired Bird's interest in the plat the subdivision had not been developed and the dedicated streets, including Pine Street, had not been

constructed. Utah County subsequently built a public works facility comprised of a public works building, a service station, and a parking lot on part of its property within Ironton Plat. It also vacated three streets at the plat's south end, but did not vacate Pine Street. Although Pine Street retained its status as a dedicated street, Utah County removed a substantial amount of earth in and around it in the course of building the public works facility.

¶ 6 In 1995, Bird conveyed the corner property, including the easement and right-of-way to Jamie and Terry Evans.[1] The Evanses sued Utah County seeking, among other forms of relief not relevant to this appeal, enforcement of the easement. Utah County resisted the enforceability of the easement on the grounds that the deed did not identify its location with sufficient specificity. The trial court agreed.

¶ 7 On appeal, the court of appeals reversed. It characterized the grant in the deed as an enforceable "floating" easement. We granted certiorari to review the court of appeals' decision.

## STANDARD OF REVIEW

¶ 8 "On certiorari, we review the decision of the court of appeals and not that of the district court." *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699. Our review is for correctness, and we grant no deference to the court of appeals' opinion.

## ANALYSIS

¶ 9 The court of appeals determined that the absence of a description of the location of the easement in the Evans deed did not amount to a fatal omission of an essential term. It reached this conclusion after analyzing its features as a "floating" or "roving" easement. The court drew the term "floating or roving easement" from *Salt Lake City v. J.B. & R.E. Walker*, 123 Utah 1, 253 P.2d 365, 368 (1953), where we used it to describe an easement grant that does not fix the location of the easement

but which may be fixed by agreement of the parties, the [acquiescent] use of the parties in a particular way ... for a considerable period of time, or by one party in whom the grant vests the right of selection or the right to fix the grant, or where the rule of necessity determines the location because any other place would annul, ruin or militate against the grant.

*Id.* at 368.

¶ 10 Although the court of appeals' analytical approach was, in many respects, equal to the task of properly resolving the issue before it, the floating easement definition used in *Walker* did not account for the factual circumstance we face here: no express description of the location of the Evanses' easement and no vesting in anyone the authority to position the easement.

¶ 11 We have chosen to follow a different course than that taken by the court of appeals, but one that reaches the same result. Our approach is one that we believe tests more directly and reliably the merits of the County's claim that an express term in the Evanses' deed fixing the location of the easement on the strip was essential to its enforceability.

¶ 12 Guiding and informing our approach to ascertaining whether the Evanses' easement description contained all essential terms is the core principle that the burden of the servitude must be communicated to the owner of the servient estate with sufficient clarity to understand it. The principle is an application to easements of the basic concepts of the law of contracts that the duties of a party to a contract must be described in detail sufficient to make it possible to ascertain whether the agreement has been kept or broken. *Nielsen v. Gold's Gym*, 2003 UT 37, ¶ 13, 78 P.3d 600.

¶ 13 Of course, the goal of communicating the scope of a servitude is most easily achieved by fixing the location of the easement in descriptive language within a deed. Although certainly desirable in most instances, language fixing the location of an ease-

---

1. The original deed conveying the corner property from Bird to the Evanses did not refer to the easement. Bird later filed a corrected deed that did describe the easement and right-of-way. This course of events is not germane, however, to this appeal.

ment is not always necessary when other terms of the easement safeguard the servient estate from the risk that its burden may be greater than that for which it bargained.

¶ 14 The facts of this case illustrate this point. The minimum extent of the servitude can be easily extracted from the text of the deed. The area of the servient estate, the strip, is precisely described, as is the width of the easement, fifty-six feet. At minimum, the length of the easement would be equal to the width of the strip at a point bounded by Pine Street on one side and the Evanses' property on the other. The minimum gross area of the strip subject to the servitude can be easily calculated by multiplying the length by the width. The dominant estate, the Evanses' corner property, is identified. The stated purpose of the easement, a road connecting Pine Street to the corner property, is clear. Whatever uncertainty the County may have about the ultimate location of the Evanses' easement, the deed unambiguously communicated a full complement of data describing its minimum burden to the County's fee interest. Although the location of the easement was not fixed, the deed language removed from all doubt that the grantor and grantee intended to create an easement for a particular purpose, covering an ascertainable minimum area.

¶ 15 This is not to diminish the importance of the location of the Evanses' easement on the strip. The three word phrase, "location, location, location," has earned its claim to hackneyed banality on the strength of the truth that it imparts about real property. There can be little question that where the Evanses' easement finally alights will materially affect its burden on the County's land. Were the legal analysis to end here, we would agree with the County that a locating description for the easement was an essential term and that without it the easement would be unenforceable. But the analysis need not, and should not, end here.

█ ¶ 16 There is no dispute that the County was fully aware that the strip was burdened by an easement. Based on the language of the deed it could determine with precision what its minimum burden was. This sizeable quantity of evidence firmly es-

tablishes an intent to create an easement and unambiguously defines all essential features of the servitude except its location. Confronted with this evidence, we have an obligation to explore whether the deed's failure to identify the location of the easement can be remedied without altering in any material way the bargain struck between the grantor and grantee. Corbin on Contracts encourages this effort, stating:

> If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left.

Corbin on Contracts, § 4.1 (rev. ed.1993).

¶ 17 The role of the court as contract "gap filler" is neither new nor revolutionary. *See, e.g., Homestead Golf Club, Inc. v. Pride Stables,* 224 F.3d 1195 (10th Cir.2000); *Honolulu Waterfront Ltd. P'ship v. Aloha Tower Dev. Corp.,* 692 F.Supp. 1230 (D.Haw.1988); *Bergin v. Century 21 Real Estate Corp.,* 2000 WL 223833, 2000 U.S. Dist. Lexis 2088 (D.N.Y.2000); *Zvonik v. Zvonik,* 291 Pa.Super. 309, 435 A.2d 1236 (1981); *Alaimo v. Tsunoda,* 215 Cal.App.2d 94, 29 Cal.Rptr. 806 (Ct.App.1963); *Sterling v. Taylor,* 113 Cal. App.4th 931, 6 Cal.Rptr.3d 836 (Ct.App. 2003); *In re Sing Chong Co.,* 1 Haw.App. 236, 617 P.2d 578 (1980); *Wolvos v. Meyer,* 668 N.E.2d 671 (Ind.1996); *Nusbaum v. Saffell,* 271 Md. 31, 313 A.2d 837 (1974); *Oglebay Norton Co. v. Armco, Inc.,* 52 Ohio St.3d 232, 556 N.E.2d 515 (1990); *Genest v. John Glenn Corp.,* 298 Or. 723, 696 P.2d 1058 (1985).

¶ 18 The location-fixing gap in the Evans deed is one that we are well suited to fill. We conclude that the most appropriate method to fix the site of the easement is to assign to the County the authority to select its location. In exercising this authority, the County enjoys considerable discretion, limited by a duty to conform the positioning of the easement to the stated purposes of the easement reservation. See *Barton v. Tsern,* 928 P.2d 368 (Utah 1996) (holding it is appro-

priate to fill in a missing term because we are not altering the agreement).

¶ 19 We draw our confidence in selecting this approach from several sources. First, the designation of the County to locate the easement offers assurance that our "gap-filling" does not alter the scope of the servitude for which the County bargained. The County may, if it chooses, position the easement over that portion of the strip that conforms to the minimum amount of surface area contemplated in the deed description. If the alterations made by the County to the strip make this site impractical, the County is at liberty to select an alternate location fifty-six feet in width that provides the Evanses access from the corner property to Pine Street. Thus the opportunity to position the easement removes the issue of whether location selection is an essential term from the field of battle with neither side sustaining injury.

¶ 20 This approach to locating unfixed easements has enjoyed general acceptance among courts and commentators. In adopting this approach we join a majority of jurisdictions that have confronted this issue. The following jurisdictions that have faced the question of how to deal with the unfixed easement location problem and have adopted some version of the model in which the owner of the servient estate is granted the first opportunity to define the easement location. *Arkansas Val. Elec. Co-op. Corp. v. Brinks*, 240 Ark. 381, 400 S.W.2d 278, 279 (1966); *Ballard v. Titus*, 157 Cal. 673, 110 P. 118, 122 (1910); *Bethel v. Van Stone*, 120 Idaho 522, 817 P.2d 188, 193–94 (App.1991); *Daniel v. Clarkson*, 338 S.W.2d 691, 692–93 (Ky.1960); *Larson v. Amundson*, 414 N.W.2d 413, 417 (Minn.App.1987); *Graves v. Gerber*, 208 Neb. 209, 302 N.W.2d 717, 720 (1981); *Sussex Rural Elec. Co-op. v. Wantage Tp.*, 217 N.J.Super. 481, 526 A.2d 259, 263–64 (App. Div.1987); *Pomygalski v. Eagle Lake Farms, Inc.*, 192 A.D.2d 810, 596 N.Y.S.2d 535, 537 (N.Y.App.Div.1993); *McConnell v. Golden*, 104 R.I. 657, 247 A.2d 909, 912 (1968); *Smith v. Comm'rs of Pub. Works*, 312 S.C. 460, 441 S.E.2d 331, 337 (App.1994); *Vinson v. Brown*, 80 S.W.3d 221, 228 (Tex.App.2002); *Patch v. Baird*, 140 Vt. 60, 435 A.2d 690, 691–

92 (1981); *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 588 (Wyo.1999).

¶ 21 Leading commentators have also endorsed the assignment of locating authority to the holder of the servient estate over voiding the easement. In their treatise, *The Law of Easements & Licenses in Land*, Professors Bruce and Ely summarize with approval that doing so is considered by "many jurisdictions" a

practical approach to the problem. In these states, the owner of the servient estate is entitled to designate a reasonable location for the easement. If the servient owner fails to make such a designation within a reasonable period, the easement holder may select a reasonable route. If the parties are unable to reach an agreement, a court may specify a location for the easement.

Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land*, ¶ 7.02[2][a] (rev. ed. 2000).

¶ 22 This pragmatic approach to easement location overcomes the County's objection that the Evanses easement must fail because it cannot be "construed as to burden the servient estate only to the degree necessary to satisfy the purpose described in the grant." *Weggeland v. Ujifusa*, 14 Utah 2d 364, 384 P.2d 590, 591 (1963). Under our approach, the County is empowered to provide this assurance. In fact, all of the County's assertions that the term locating the easement is essential are variations on the theme that express descriptive language is required for the County to get what it bargained for. This complaint is unavailable to the County under the approach we announce today. Accordingly, we affirm the court of appeals.

¶ 23 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.