2009 UT App 248

**OAK LANE HOMEOWNERS ASSOCIATION, Plaintiff and Appellant,**

v.

**Dennis L. GRIFFIN and Renae Griffin, Defendants and Appellees.**

**No. 20080084–CA.**

Court of Appeals of Utah.

Sept. 11, 2009.

Stephen Quesenberry and Jessica Griffin Anderson, Provo, for Appellant.

Shawn D. Turner, South Jordan, for Appellees.

Before Judges THORNE, ORME, and DAVIS.

## OPINION

ORME, Judge:

¶1 Oak Lane Homeowners Association (the Association) appeals a summary judgment ruling in favor of Dennis L. and Renae Griffin. More specifically, the Association claims that the trial court created a new type of easement, "an easement by plat," which is not recognized in Utah. Further, the Association urges that there are three material facts in dispute relating to the use, ownership, and nature of the private roadway in question. We affirm the grant of summary judgment.

## BACKGROUND

¶2 In 1977, the Oak Hills Subdivision was platted, showing five lots that abutted Oak Lane. Lots 1, 3, 4, and 5 were accessible only by way of Oak Lane, but lot 2 was accessible from Oak Lane as well as from a public roadway.[1] The plat initially included the following language:

> Know all men by these presents that we, all of the undersigned owners of all of the property described in the surveyor's certificate hereon and shown on this map, have caused the same to be subdivided into lots, blocks, streets and easements and do hereby dedicate the streets and other public

areas as indicated hereon for perpetual use of the public.

¶3 The original seven owners of the five lots signed the plat, after crossing out the portion of the above language that dedicated the streets and other public areas to the public, so that it read as follows:

> Know all men by these presents that we, all of the undersigned owners of all of the property described in the surveyor's certificate hereon and shown on the map, have caused the same to be subdivided into lots, blocks, streets and easements.

The Alpine City Council accepted the plat, also deleting from its resolution language about accepting the dedication, and the plat was recorded in 1977. Both sides and the trial court correctly infer that, under these circumstances, Oak Lane remained a private roadway.

¶4 One year before the subdivision was created, the Van Wagoners purchased the land that became lot 2 and, as original owners, signed the plat. Seven years later, they sold lot 2 to the Watkinses, who lived there for approximately five years. The Association submitted affidavits from both the Van Wagoners and the Watkinses reciting that they "understood that Oak Lane was a private road and used it only with permission."

¶5 The Griffins are the third owners of lot 2, having purchased the property in 1988. Their deed references the 1977 subdivision plat and states that they obtained title to the property "[s]ubject to easements, covenants, conditions and restrictions of record."

¶6 In 2003, the owners of lots 1, 3, 4, and 5 formed the Association to manage the maintenance and landscaping of Oak Lane. As alleged in one landowner's affidavit, the other lot owners "invited the Griffins to join the [A]ssociation because they were using Oak Lane by permission without sharing any of the on-going expenses," but the Griffins did not want to join. The affidavit states that "Mrs. Griffin ... refused to join ..., refused to pay for anything, and asserted her intent to continue using Oak Lane."

---

1. The Association points out that the driveway on lot 2 runs only from the public road.

¶ 7 The original owners of the platted lots quit-claimed their interests in Oak Lane to the Association. The Association accordingly claims ownership of Oak Lane. The Association subsequently placed boulders on Oak Lane to prevent the Griffins from using the lane.

¶ 8 In its ruling on summary judgment, the trial court determined that "[w]hen the Oak Lane Subdivision was created, an easement was created over the private lane, contained in the subdivision, for all those property owners who abut the lane." Because "[t]he Griffins are property owners whose property abuts the lane," and because "[t]he Griffins['] property was sold to them by reference to the recorded Plat and [described] their property ... by reference to that plat," the trial court concluded that "[t]he Griffins have an easement, for access, ingress and egress from Oak Lane to their property." The Association appeals from this ruling.[2]

## ISSUE AND STANDARD OF REVIEW

¶ 9 The Association challenges the trial court's summary judgment ruling on both legal and factual grounds. Pursuant to rule 56 of the Utah Rules of Civil Procedure, an order granting summary judgment is sustainable "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "[W]hen 'reviewing a grant of summary judgment' we give 'no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness.'" *Oak Lane Homeowners Ass'n v. Griffin*, 2006 UT App 465, ¶ 6, 153 P.3d 740 (quoting *Goodnow v. Sullivan*, 2002 UT 21, ¶ 7, 44 P.3d 704).

## ANALYSIS

### I. The Trial Court's Legal Ruling Is Correct

¶ 10 The Association first challenges the summary judgment ruling on the

ground that the trial court erred when it determined that the Griffins had an "easement by plat" to use Oak Lane to access their property. The Association is simply wrong to the extent it alleges that Utah does not recognize easement rights in landowners whose property abuts roads referenced in recorded plats. As indicated in *Carrier v. Lindquist*, 2001 UT 105, 37 P.3d 1112, "[u]nder Utah law, landowners whose property abuts public streets, alleys, and public ways that appear on a plat map are entitled to a private easement over those public ways." *Id.* ¶ 12.

¶ 11 We acknowledge that Utah case law has not specifically addressed whether an easement in a *private* roadway arises based on a deed's reference to a plat showing that a landowner's property abuts a private roadway. However, Utah's jurisprudence readily supports the general proposition that a right of use may arise when property is purchased or otherwise transferred with reference to a recorded plat describing streets or common areas within a subdivision. The reasoning in *Tuttle v. Sowadzki*, 41 Utah 501, 126 P. 959 (1912), while specifically addressing the rights of the owners of property abutting a once-public street, supports a conclusion that persons who purchase property, which property along with abutting roadways are identified in a recorded plat, may obtain a right to use such roadways based on the circumstances surrounding their acquisition of the property, regardless of whether the roadway is public or private.

¶ 12 In *Tuttle*, the respondents, who owned property abutting what had been identified on the plat as Wabash Avenue, sought to have the appellant, Helen Sowadzki, remove materials that blocked the street. *See id.* at 960, 962. The respondents alleged that they held a private easement of access, which could not be abandoned by the public or taken without compensation based on the original owner "platting the land into blocks and lots which abut upon streets, and in selling such lots with reference to such plat."

---

**2.** This is the Association's second appeal in this matter. *See Oak Lane Homeowners Ass'n v. Griffin*, 2006 UT App 465, 153 P.3d 740. The Association was successful in having an earlier adverse summary judgment reversed. *See id.* ¶¶ 1, 10.

*Id.* at 962. The respondents claimed their private right of access could be enforced against other abutting landowners, including Sowadzki, even though the other landowners were not the original developer who had platted and sold the lots with reference to the plat, because "every owner was compelled to keep the avenue open so that every other owner might perpetually enjoy his easement." *Id.* at 964–65.

¶ 13 The recorded plat, filed in 1891, identified Wabash Avenue as a street and dedicated it to the public. *See id.* at 960–61. In a prior related case, the Utah Supreme Court determined that Wabash Avenue had been abandoned as a public roadway due to a statute permitting abandonment following five years of non-use. *See id.* Because Wabash Avenue had never actually been used as a roadway, it was abandoned in 1896 as a public road, leaving a private easement that ran with Sowadzki's property.[3] *See id.* at 961–62, 965.

 ¶ 14 The Utah Supreme Court discussed Utah law regarding easements created by plats. *See id.* at 962–65. Under Utah law, when an owner creates a plat that clearly identifies a street and then sells the property that abuts the street by referencing the plat, the purchaser of the lot acquires a right that prevents the original owner from vacating or obstructing the street. *See id.* at 962. When the recorded plat dedicates the street to the public, then a person whose land abuts the platted street obtains both a public and private easement. *See id.* The private easement, which is independent of the public easement, can survive if the public easement is abandoned or vacated, but only if the two easements were once held contemporaneously. *See id.* at 962, 964. This private easement is appurtenant to the property and "constitutes a property right which can only be taken from [the affected owners] or obstructed by making proper compensation." *Id.* at 962.

¶ 15 Because the *Tuttle* respondents claimed rights against another person whose property abutted the street, Sowadzki, instead of against the original landowner who recorded the plat, the Court also addressed what rights abutting lot owners have as against one another. *See id.* at 963–65. The Court acknowledged that even if a street was abandoned as a public street, abutting owners may not obstruct the street so that other abutting owners may not use it. *See id.* at 963. The rights of abutting owners as against each other are based upon equitable principles. *See id.* at 963–64. In determining whether equity justified an abutting owner's right to use the street, the Court considered the circumstances that existed at the time the abutting owner purchased his or her property. *See id.* at 964.

¶ 16 The *Tuttle* court determined that Sowadzki initially had a private easement to use the designated street that survived its abandonment by the public. *See Tuttle v. Sowadzki*, 41 Utah 501, 126 P. 959, 964–65 (1912). However, it was clear from Sowadzki's actions, i.e., building a fence and planting a garden and shrubs in the area earmarked as a street and never using the designated street as a method of ingress or egress, that any private easement for access had clearly been abandoned by the time the *Tuttle* respondents purchased their property. *See id.* at 961, 963, 965. Because they had purchased their lots many years after Wabash Avenue had been abandoned as a public roadway, from someone other than the original owner who platted the property, and they had clear notice at the time they purchased their property that no actual roadway existed, the Court found it inequitable to grant them any easement in the area once intended to be Wabash Avenue. *See id.* at 963–65. *See also Carrier v. Lindquist*, 2001 UT 105, ¶¶ 14–15, 37 P.3d 1112 (distinguishing *Tuttle* and concluding that the landowners had a private easement in a roadway when the

---

**3.** Sowadzki's acts and intentions showed she abandoned her private easement, as such, but the Court determined that title to a portion of the intended street reverted to her as an abutting landowner. *See Tuttle v. Sowadzki*, 41 Utah 501, 126 P. 959, 965 (1912). *Cf. Sears v. Ogden City*, 572 P.2d 1359, 1363 (Utah 1977) ("[T]he interest a municipal body acquires in the streets in a platted subdivision is a determinable fee. Upon vacation by the governing authorities, the fee reverts to the abutting property owner.").

roadway had been vacated by the public only after they had purchased their property).

¶ 17 The *Tuttle* court clearly recognized that an independent private right arises when a public right to use a street has been created by a plat. *See* 126 P. at 962, 964. We see no reason why such a right, regardless of the characterization of such right,[4] would not also arise when a person purchases a lot with reference to a recorded plat showing private roadways instead of public roadways. The same principle—that land purchasers should be able to expect that a street identified in a referenced plat is what it purports to be in the plat, i.e., a street by which to access their property—still applies. Accordingly, as long as a roadway is still in use as a roadway at the time a lot is purchased, something "tangible" at the time the property was purchased on which to base the right of access would exist, *id.* at 963, and it would be inequitable to deprive a lot owner of such a right years later, as the Association is trying to do in this case. In *Tuttle*, if the avenue had been used as a private roadway by Sowadzki at the time the respondents purchased their lots, the Supreme Court's reasoning indicates that the outcome would have been different because in such a situation, the equities that were lacking in *Tuttle*

would clearly have been manifest. *See id.* at 963–64.

¶ 18 We further note that a leading treatise on Utah real property law has interpreted Utah's case law in the same way. *See* David A. Thomas & James H. Backman, *Utah Real Property Law* § 12.02(b)(2)(iii), at 438 (2008) (stating that "[w]hen an owner subdivides property in accordance with a map (or plat or plan), a purchaser . . . of a lot within the subdivision acquires an easement over private streets as laid out on the map even if the easement is not expressly created in the documents of conveyance"); *see also id.* § 12.02(b)(2), at 436 ("[I]mplied easements arise from the circumstances of a transaction or the circumstances surrounding the properties involved. Courts are willing to imply an easement because they are convinced that the parties intended to create an easement based on the circumstances accompanying a conveyance of property. The court thereby brings into existence the results of the perceived, unexpressed intent of the parties derived from the facts of the situation.") (footnote omitted). Additionally, the majority view recognizes the existence of easements in favor of landowners whose property abuts private roadways referenced in a plat. *See* 25 Am.Jur.2d *Easements and Licenses in Real Property* § 21, at 519–20

---

4. While the easement or right that arises is in some ways similar to an implied easement, it is also arguably an express easement based on the reference to the plat in the conveyance or grant of the property. *See* 4 Richard R. Powell, *Powell on Real Property* § 34.06, at 34–41 to 34–43 (Michael Allan Wolf ed., LexisNexis Matthew Bender 2000) ("In one sense such an easement is created by express conveyance, since one can construe the reference in the deed to the bounding street or to the underlying map as representing the easement. The fact remains, however, that the easement exists because of the combined effect of a referential phrase in the conveyance and of the circumstances of the conveyance. Some courts, therefore, speak of such an easement as arising from 'implication.' ") (footnotes omitted). *See also* 25 Am.Jur.2d *Easements and Licenses in Real Property* § 21, at 519–20 (2004) (indicating that different jurisdictions characterize the rights resulting from reference to a plat differently, with "the 'broad' view . . . designat[ing it] as an easement, to the use of all the streets and alleys delineated on the map or plat"; the " 'intermediate' view, referred to as the 'beneficial' or the 'complete enjoyment' rule, [holding] that the extent of the grantee's private right . . . is limited to

such [uses] as are reasonably or materially beneficial to the grantee and of which the deprivation would reduce the value of his or her lot"; and "the 'narrow' view, sometimes referred to as the 'necessary' rule, [holding] that the private right . . . is limited to the abutting street and such others as are necessary to give him access to a public highway") (footnotes omitted).

Further, as shown in *Tuttle v. Sowadzki*, 41 Utah 501, 126 P. 959 (1912), the continued vitality of such an easement turns on the equities that exist at the time of conveyance. *See id.* at 962–63. Accordingly when pleading and proving that an easement arose based on reference to a plat, a party would not necessarily be required to plead and prove the elements of one of the typical easements, i.e., an easement by necessity, implication, prescription, or expression, as the Association suggests in its brief. Rather, in accordance with *Tuttle* and our opinion in this case, a party would only have to plead and prove that such a right of use was intended to be covered by the grant or sale of the property based on documents relied on at the time of the conveyance, the parties' knowledge and intent, and the character or purpose of the road or common area at the time of the conveyance.

(2004) ("Generally, where property sold is described in the conveyance with reference to a plat or map on which streets, alleys, parks, and other open areas are shown, an easement therein is created in favor of the grantee. Such an easement is deemed a part of the property to which the grantee is entitled, and exists entirely independent of dedication to a public use.... An easement will be implied from a map or plat only if it was intended by the parties, and no easement can be implied where the grantor has no interest in the roads reflected on the pl[a]t map.") (footnotes omitted); 4 Richard R. Powell, *Powell on Real Property* § 34.06, at 34–40 to 34–41 (Michael Allan Wolf ed., LexisNexis Matthew Bender 2008) ("Where a conveyance of land describes the parcel as bounded by a street designated in the conveyance, or refers to a map on which spaces for streets, parks, or other common uses are shown, but the conveyance says nothing about the creation of an easement or a dedication to a public use, the conveyee of the land acquires an easement with respect to the street or the areas shown on the map.") (footnotes omitted); 7 *Thompson on Real Property* § 60.03(a)(3)(iii), at 480–81 (David A. Thomas ed., 2006) (" 'A developer's sale of lots in a subdivision according to a recorded plat creates private easement rights in favor of purchasers in any area set apart for their use.' Those rights ... exist whether or not there has ever been acceptance by public authorities or the public generally, on the ground that the purchasers have given consideration for the property's higher value by paying a higher price. Even where the dedication by plat or map is not formally accepted by the appropriate authorities, persons who rely on the plat in making a purchase acquire an interest akin to an easement appurtenant in the rights of way.") (footnotes omitted).

¶ 19 For the reasons discussed above, we conclude that when a party acquires land via a deed that references a recorded plat showing privately owned streets or other privately owned areas of common use for the apparent benefit of the landowner, a right to use those streets or common areas will typically arise in favor of the landowner. This right may be enforced not only as against the original developer, but also as against neighboring landowners who attempt to interfere with the right. In keeping with *Tuttle*, however, when the street or common area is privately owned and the dispute is not with the original developer, equitable considerations come into play. These considerations include the intent of the parties, notice, and the purpose or use of the roadway or other common area at the time the land was acquired. For example, if the neighboring owners determined that the street or common area would be used for a different purpose prior to the new landowner's purchase of his or her lot, and the new purchaser of the lot had actual or constructive notice of the different purpose for the street or common area—and thus that any inconsistent plat designation was no longer viable—the right of use suggested by the plat may well be unenforceable. *Cf. Evans v. Board of County Comm'rs*, 2004 UT App 256, ¶ 24, 97 P.3d 697 (recognizing Utah's "longstanding doctrine that a private easement over platted streets arises upon the purchase of property with reference to the plat map, so long as the roads have not been legally vacated prior to the purchase"), *aff'd*, 2005 UT 74, 123 P.3d 432.

¶ 20 In accordance with our ruling, the trial court's conclusion that the Griffins had an easement to use the road based on the deed's reference to the plat [5] is sustainable as a matter of law given that Oak Lane was used as a roadway at the time the Griffins obtained title to lot 2 and is still used as a roadway. Therefore, at the time the Griffins purchased their property and received a deed referencing the plat, it was entirely reasonable for the Griffins to assume that Oak Lane was what it purported to be based on the

---

5. Regardless of whether an actual easement arose, the right the Griffins obtained by reason of their deed referencing the plat clearly encompassed the right to use Oak Lane to access their property given that Oak Lane was being used in that way when they acquired their property in 1988–some fifteen years before the Association was even created. *See generally Salt Lake County v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 21, 89 P.3d 155 (" '[A]n appellate court may affirm a trial court's ruling on any proper grounds, even though the trial court relied on some other ground.' ") (alteration in original) (citation omitted).

referenced plat, i.e., a street they could use to access their property.

## II. There Are No Material Disputed Facts

¶ 21 The Association further argues that the trial court's summary judgment ruling is not sustainable because there are three material disputed facts "relating to the use, ownership[,] and the nature of Oak Lane." We disagree. While there are definitely facts in dispute, none of those facts are material to a determination of whether the Griffins had a right to use Oak Lane to access their property. *See generally* Utah R. Civ. P. 56(c).

¶ 22 First, whether the Griffins continuously used the road does not determine whether or not an easement or right arose, as would be true with a prescriptive easement.[6] *Cf. Tuttle v. Sowadzki,* 41 Utah 501, 126 P. 959, 965 (1912) (indicating that a landowner can abandon an easement but that abandonment of a private easement will not be "lost by mere nonuse[ ]"); *supra* note 4 (discussing case law indicating that the right of use arises based on equities and the inferred intent of the parties existing when the grantor grants the property to the grantee). The Griffins' right arose based on their deed's reference to the recorded plat and the lane's use as a roadway at the time of their acquisition.

¶ 23 Second, ownership of the road is not material because the easement came into being irrespective of who or what entity owned Oak Lane given the Griffins' deed's reference to the plat and the obvious purpose of Oak Lane as a road by which to access the subdivision lots.[7] And third, the precise nature of the road is also not material to the resolution of this appeal.[8] The trial court's ruling is based on the legal determination that an easement arose to use Oak Lane when the Griffins received title to lot 2 and the deed referenced the subdivision plat. Since a right would arise under the facts of

---

**6.** A prescriptive easement requires continuous use. *See Potter v. Chadaz,* 1999 UT App 95, ¶ 17, 977 P.2d 533 ("In order to establish a prescriptive easement in Utah, [one] must show a use that is (1) open, (2) notorious, (3) adverse, and (4) continuous for at least twenty years."). Continuous use is also a requirement when claiming a right based on the typical easement by implication. *See id.* ¶ 16 ("There are four elements necessary to constitute an easement by implication: (1) unity of title followed by severance; (2) at the time of severance the servitude was apparent, obvious, and visible; (3) the easement is reasonably necessary to enjoy the dominant estate; and (4) use of the easement was continuous rather than sporadic."). However, under *Tuttle* and our ruling in this case, continuous use is not necessary when claiming a right of use based on a recorded plat.

**7.** There clearly is a dispute regarding ownership of Oak Lane. One interpretation of the facts, however, is that the Griffins actually have a part ownership interest in Oak Lane and that therefore the Association would not have received clear title to Oak Lane when the Griffins did not transfer their interest in Oak Lane to the Association.

Contrary to the Association's arguments, the plat indicates that the original lot 2 owners were part owners of the road, as were the other four lot owners. While one of the original owners of lot 2 signed the quitclaim deed purportedly transferring ownership of the road to the Association, it is doubtful that he would have retained any ownership interest in the road after lot 2 was transferred to the second owners. Such ownership interest likely would have been passed from owner to owner with the transfer of lot 2. Further, while the first owners clearly had an easement or right to use Oak Lane by virtue of the recorded plat, it is doubtful they would have been able to permanently sever such an easement or right from lot 2. *See generally Wood v. Ashby,* 122 Utah 580, 253 P.2d 351, 354 (1952) ("[A] right of way appurtenant to an estate is appurtenant to every part of it and inures to the benefit of the owners of every part."); *Adamson v. Brockbank,* 112 Utah 52, 185 P.2d 264, 272 (1947) ("[F]or it is a well-recognized rule of law that, on a severance of an estate by a sale of a part thereof, all easements of a permanent character, that have been created in favor of the land sold, and which are open and plain to be seen, and are reasonably necessary for its use and convenient enjoyment, unless expressly reserved by the grantees, pass as appurtenances to the land."); *Tuttle v. Sowadzki,* 41 Utah 501, 126 P. 959, 962 (1912) (indicating that a private easement arising in a public road based on a plat is appurtenant to the land).

**8.** The opposite was true in the earlier appeal. In *Oak Lane Homeowners Ass'n v. Griffin,* 2006 UT App 465, 153 P.3d 740, we remanded because we concluded there was a dispute of material fact. *See id.* ¶ 10. The trial court's earlier decision had rested squarely on the conclusion that Oak Lane was a common-use private lane, and we determined that the question of whether Oak Lane was a common-use private lane turned on material facts in dispute. *See id.* ¶¶ 5, 10.

this case regardless of whether Oak Lane was public, private, or some variation of the two,[9] this fact is also not material to the legal determination.[10]

## CONCLUSION

¶ 24 We conclude that the trial court did not err in granting the Griffins summary judgment because Utah case law fully supports its determination that a right to use Oak Lane to access lot 2 arose in favor of the Griffins when their deed referenced the recorded plat showing that lot 2 abuts Oak Lane, given that Oak Lane was used as a road to access lots within the subdivision at the time the Griffins purchased lot 2. Further, although some facts are clearly in dispute, none of the disputed facts identified by the Association are material, given the applicable legal analysis. We accordingly affirm the trial court's summary judgment ruling.

¶ 25 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and JAMES Z. DAVIS, Judge.

---

9. To the extent there is a dispute regarding whether the plat clearly shows that Oak Lane was a private lane, rather than a public lane, such a dispute is not material under our holding because the Griffins' right to use Oak Lane would have arisen regardless of whether Oak Lane was private or public.

10. We are not unmindful of the real underlying problem, namely that the other lot owners do not want the Griffins to essentially use Oak Lane as a pad on which to park vehicles and that the Griffins, while pleased to use the lane, do not want to contribute to its maintenance. Whether such a use is within the scope of the right the Griffins have in Oak Lane or whether the Griffins can be required to help pay to maintain Oak Lane has not been briefed, and we accordingly

do not resolve these issues. We note, however, that the trial court's ruling indicates that the Griffins' easement or right of use only includes "access, ingress and egress from Oak Lane to their property." Furthermore, we note that when more than one landowner has an interest in an abutting street, absent an agreement otherwise, the presumption is that they should divide maintenance costs pro rata. *See Aspen Acres Ass'n v. Seven Assocs.*, 29 Utah 2d 303, 508 P.2d 1179, 1183 (1973) ("Absent any agreement on the question of maintenance of a private way, the burden of upkeep should be distributed between dominant and servient tenements in proportion to their relative use of the road, as nearly as such may be ascertained.") (citation and internal quotation marks omitted).